GUIDRY, Judge.
This is a child custody proceeding. The mother, Sondra Kay Procell Sepulvado, appeals from a judgment awarding sole custody of her child, John Marlin Sepulvado, to the father, John Richard (Ricky) Sepulvado.
Ricky and Sondra Sepulvado were married on August 22, 1980. The only child of their marriage, John Marlin Sepulvado, was born on April 25, 1982. On September 20, 1982, Sondra filed suit for separation and custody of the child. On September 27, 1982, Sondra was awarded sole custody of the child. Subsequently, on June 15, 1983, by stipulation of the parties, Sondra and Ricky were awarded joint custody of John. Each parent was to have custody of the child for alternating two week periods. A judgment of divorce was signed on December 8, 1983. The judgment of divorce perpetuated the previous decree of joint custody rendered on June 15, 1983.
On April 16, 1984, Ricky Sepulvado filed a motion for change of custody seeking sole custody of the child. He alleged that Sondra Sepulvado (now Ferguson) was an unfit parent because she failed to seek medical attention for the child when he became severely ill while under her care. Sondra countered by also filing a motion seeking sole custody on the basis of the father’s unfitness, i.e., his alleged extensive criminal record. The rules were consolidated for trial.
At the hearing in this matter, Dr. James Hill, the child’s physician, was called to testify. Dr. Hill testified that the father brought the child into his office on two occasions when the child was suffering from pneumonia. The first occasion was on May 9, 1983. According to Dr. Hill, the child had a very severe pneumonia with a temperature of 105.7 degrees. Dr. Hill indicated that it was his opinion that the child had been ill for a period of greater than forty-eight hours. On April 9, 1984, the father again brought the child to Dr. Hill’s office. Dr. Hill diagnosed the child’s illness as severe tonsillitis with an early pneumonia. The child’s temperature was 104 degrees. Dr. Hill opined that the child had been ill for at least forty-eight hours.
The father, through his testimony, as well as other witnesses, established that the child became ill on these two occasions while under the care of the mother. Sondra, the mother, was not questioned extensively concerning the May 9, 1983 incident but did offer an explanation regarding the April 9, 1984 incident. According to her, on April the 8th she observed that the child was running a fever so she gave him Tylenol and a decongestant called Aldecon. She took the child’s temperature and it registered 99 degrees. April 8th happened *520 to fall on a Sunday and, according to Sondra, she didn’t think the child’s condition was serious enough to rush the child to the emergency room. At 6:00 p.m. that Sunday night, the father was given physical custody of the child pursuant to the joint custody arrangement. Sondra sent the medicine along with the child. Sondra added that the father must not have thought that the child’s illness was that serious either since it was not until the following morning that the child was brought to Dr. Hill’s office. It was established that Sondra had sought medical attention for the child on other occasions. Moreover, Dr. Hill indicated that the child is basically healthy although he is prone to develop severe infections more so than other children.
In support of her claim of the father’s unfitness as a parent, the mother introduced evidence of the father’s alleged extensive criminal record. Wayne Eborb, the Chief of Police of Zwolle, testified that since April 29, 1980 Ricky Sepulvado had been arrested fifteen times and forfeited bond on those charges. Many of the charges were traffic violations but there were also charges for criminal mischief and disturbing the peace. James Brumley, the Sheriff of Sabine Parish, testified that Ricky had been charged with eleven criminal offenses since 1978 other than those prosecuted by the Town of Zwolle. However, Ricky was never convicted of any of these charges. Ricky was tried on an attempted second degree murder charge and found not guilty.[1]
After hearing all of the evidence, the trial judge awarded Ricky Sepulvado sole custody of the child. In doing so, the trial judge stated:
“BY THE COURT: The Court in this case is faced with a situation where admittedly both parents have liabilities in terms of their ability to take care of the child. The father’s record is posed as a reason why he should not have sole custody of the child. However, it is notable that all of these instances cited resulted in no convictions. They were all bail forfeitures in the Zwolle Mayor’s Court and either bond forfeitures or verdicts of not guilty in this court. It is obvious that he has some problems in that area. Even though they are not convictions I think you can conclude that there are problems there.
However, I consider the two instances, which I consider the evidence to have established, in the proper care of the child by the mother in not securing proper medical care for the child, occurred at times where she surely should have known of the child’s obviously serious illness. I consider those to outweigh any of the liabilities and deficiencies the father may have, which the Court has already mentioned. I know that she is a first time mother, and I understand all of that, and the doctor admitted during his testimony that a first (sic)-time mother was over-cautious, if anything, in securing medical attention for a child. The child on these two (2) occasions had an advanced illness of at least forty-eight (48) hours’ duration, perhaps more.
So for those reasons, the Court will award the father custody of the child, sole custody, subject to reasonable visitation rights in favor of the mother....”
Sondra appeals urging that the trial court erred in granting sole custody of the child to the father.
La.C.C. Art. 157 provides in pertinent part:
“A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.”
La.C.C. Art. 146 provides in pertinent part:
“A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the *521 suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly....
(2) To either parent....

C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.”
The Louisiana Supreme Court in Turner v. Turner, 455 So.2d 1374 (La.1984) stated:
“The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is insufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to reestablish the propriety of the presumption’s conclusion.”
In the instant case, the trial judge made no mention of the prior joint custody award in rendering his decision. Presumably, he was convinced that joint custody was not in the best interest of the child. Both parents sought to have sole custody of the child. Neither parent suggested to the trial judge that joint custody should continue, although Sondra argues, in the alternative, on appeal that there was no evidence introduced in the trial court which warranted the discontinuation of joint custody. In light of our legislature’s determination that joint custody is the preferable arrangement, we deem it necessary to first consider whether joint custody should have been continued in this case.
In child custody matters, the trial judge is afforded wide discretion in determining which arrangement will serve the best interest of the child. His determination will not be disturbed absent a manifest abuse of discretion. Fortenberry v. Fortenberry, 432 So.2d 1125 (La.App. 3rd Cir.1983).
After carefully reviewing the record, we conclude that the trial judge did not abuse his discretion in finding that the best interest of the child would not be served by a continuation of the joint custody award. The sole criterion in making a custody award is the best interest of the child. Turner v. Turner, supra. The record reflects that less than a year following the joint custody award, each parent, by way of separate motions, petitioned the court for sole custody of the child. The record further reflects that a tremendous amount of acrimony exists between the parents. The father, Ricky, is not welcome in Sondra’s home, such that another member of Ricky’s family was required to pick the child up when Sondra’s two weeks with the child were over. Sondra testified that she fears Ricky. Ricky testified that he has been involved in physical altercations with Sondra’s present husband, Howard Ferguson. As stated by this court in Long v. Long, 458 So.2d 662 (La.App. 3rd Cir. 1984), “[f]or joint custody to work, there must be a willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.” As aforestated, neither parent sought to have joint custody continued at the trial level, each parent sought sole custody. It is made abundantly clear by the record that both parents harbor ill feelings toward one another to the point where an award of joint custody would be unworkable. See also, Hanks v. Hanks, 458 So.2d 617, 619 (La.App. 3rd Cir.1984). Under the circumstances, we know of no joint custody arrangement which would serve the best interest of the child. Consequently, we must agree with the trial judge that joint custody was not appropriate in this case.[2]
*522 We next turn to the question of which parent should have sole custody of the child. The trial judge awarded sole custody to the father. The award to the father was based in large part upon the court’s finding that on two occasions the mother failed to seek medical attention for the child when he became seriously ill while under her care.
In considering whether the trial judge erred in awarding sole custody of the child to the father, we observe at the outset that the record before us consists almost exclusively of evidence relating to the father’s past criminal activities and the mother’s alleged neglect of the child on two occasions. Very little evidence was offered by either side regarding the financial condition of the parents, their home environment, etc. We do know that the father was unemployed at the time of this hearing and living with his mother in an apartment in Zwolle. At that time, Ricky was receiving $205.00 a week in unemployment benefits. Ricky’s mother does not work and indicated a willingness to help with the child. Sondra’s present husband apparently is employed although the record does not reflect the nature of his employment. According to Sondra, “he brings home” between $300.00 and $400.00 a month. Sondra does not work. She and Howard Ferguson have a child of their own. This child was born on April 5, 1984.
To reiterate, the sole criterion in making a child custody award is the best interest of the child. As noted by our Supreme Court in Turner v. Turner, supra:
“The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health which are the judge ⅛ very purpose in child custody cases. He must protect the child from the harsh realities of the parents’ often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child’s interests.” (Emphasis added).
In the present case, the trial judge weighed the “liabilities” of each parent in determining who should have custody. It is quite evident that the trial judge was concerned with the mother’s failure to seek medical attention for the child on the two mentioned occasions. The judge found these “liabilities” of the mother to outweigh those of the father. We agree with the trial judge that the child’s welfare is the paramount concern. However, we are reluctant to attach such significance to these two incidents as did the trial judge. Admittedly the preponderance of the evidence establishes that the child became ill on these two occasions while in Sondra’s care. But Sondra’s explanation of the April 9, 1984 incident, i.e., a Sunday afternoon, 99 degree temperature, etc., appears quite plausible. Dr. Hill attributed these two incidents to either neglect or inferior observational skills on the part of Sondra. The trial judge reasoned that young mothers, such as Sondra, are generally over-cautious in securing medical attention for their child. The judge based his reasoning on the following colloquy which took place between he and Dr. Hill:
“THE COURT: Doctor, generally speaking, does a first-time mother tend to over-react in bringing the child to the doctor, in your experience?
THE WITNESS: Usually. Usually.
THE COURT: Even when they do not need to be brought at that time?
THE WITNESS: Usually, that is the error, but often there is a failure of judgment both ways, though, where they interpret, for instance, a skin rash as something very severe, when no one has ever died from a skin rash. And yet a child will be doing something subtle, like breathing very rapidly, which is the commonest danger sign, and the mother won’t make much of that. So it is hard to say, but in general, they tend to err tremendously on the side of over-caution.”
*523 Clearly, the actions of Sondra cannot be termed as that of an over-cautious mother. Yet, as attested to by Dr. Hill, young mothers very often miss telltale signals that a child is seriously ill. Although Sondra offered no explanation for the first instance in which she failed to seek medical attention for the child, it would be quite reasonable to conclude that, as a young mother, she simply did not realize that the child was severely ill. Also, as stated earlier, Sondra’s explanation for the second incident appears quite plausible.
However, even if we attribute these two incidents to poor observational skills on the . part of Sondra, her actions, or, more appropriately, her inaction is cause for concern..
Turning to the “liabilities” of Ricky, we, like the trial judge, believe that there is a problem with Ricky’s behavior irrespective of whether or not he has ever been convicted of a crime. Undoubtedly, Ricky’s behavior raises serious question concerning whether the best interest of the child is served by being placed in the sole custody of Ricky. On the other hand, the same may be said of Sondra in light of her actions.
In attempting to resolve this difficult issue, we are reminded of the role we play as an appellate court, particularly in child custody cases. As stated by this court in Berzins v. Betts, 457 So.2d 282 (La.App. 3rd Cir.1984):
“In child custody cases, the trial judge is vested with a vast amount of discretion in making a determination of custody. On appellate review, great deference must be accorded to the decision of the trial court, not only because of that court’s better capacity to evaluate witnesses, but also because of proper allocation of trial and appellate functions between the respective courts. Bagents v. Bagents, 419 So.2d 460 (La.1982); Bentley v. Bentley, 440 So.2d 1365 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 125 (La.1984). The trial judge is in a better position to evaluate the best interest of a child from his total overview of the conduct and character of the parties. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Paul v. Cloud, 378 So.2d 586 (La.App. 3rd Cir.1979), writ denied, 380 So.2d 101 (La.1980).” (Emphasis added).
There is no question but that Ricky has seen to the medical needs of the child. There was no evidence introduced at the hearing which indicates that he cannot properly care for the child other than for his alleged criminal activity. Ricky indicated that a great deal of his trouble with the law of late has been due to the bad blood which exists between he and Sondra’s present husband, Howard Ferguson. Ricky stated that he hoped that they could work out their differences. In addition, Ricky’s mother indicated that she is willing to help with the child. In light of the foregoing, we cannot say that the trial judge abused his discretion in awarding sole custody of the child to Ricky.
For the above stated reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. It appears that many of Ricky’s recent skirmishes with the law involved Sondra’s present husband, Howard Ferguson.

. Obviously, a finding of unfitness on the part of the mother would also preclude an award of joint custody. That issue will be addressed more fully later in the opinion.