521 So.2d 754 (1988)
Suzanne T. MURRAY, Appellee,
v.
Lawton Dawson MURRAY, Appellant.
No. 19345-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
*755 Hall & Golden by W. Eugene Golden, Shreveport, for appellee.
Comegys, Lawrence & Jones by Scott J. Crichton, Shreveport, for appellant.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
In a child custody proceeding, the parents of two minor children were awarded their joint custody, with the mother appointed the domiciliary parent. Some months later the father filed a rule to change the domiciliary parent to himself, which was denied. Several weeks following that, the mother filed a rule to terminate joint custody and to be awarded sole custody of the children, which was granted. The father appealed both judgments. For the reasons explained, we affirm.
Lawton Murray and Suzanne Murray were married in 1978 and established their matrimonial domicile in Caddo Parish. Two children, both girls, were born of the marriage.
Following a physical separation of the parents, a judgment was rendered in November 1985 granting the parents joint custody of their children, with Mrs. Murray named the domiciliary parent. A judgment of divorce, incorporating the custody award, was signed in August 1986.
Mrs. Murray was initially awarded $630 per month child support. After the award was made, Murray lost his job in the oil industry and could only find employment paying susbtantially less than his previous job. Consequently, on November 23, 1986 Murray filed a rule to reduce the child support.
Mrs. Murray reconvened, asking that Murray be held in contempt of court for failing to meet his support obligations and *756 that the joint custody plan be modified to allow her to move to New Orleans with the children. Murray responded by filing a rule to change the domiciliary custody from Mrs. Murray to the mover, maintaining that this would be in the best interest of the children.
At the trial of these consolidated rules, each party presented considerable evidence in an attempt to show that the other parent was morally unfit. The father admitted to having lived with one Bonnie Barrios while he was still legally married to Mrs. Murray and having the children in their common dwelling for visitation. This extramarital relationship between Murray and Ms. Barrios continued for 18 months, until they were married in August 1986. Ms. Barrios had three minor children living with her, one, age 7, and twins, age 5.
Murray and his second wife testified extensively about the educational and family atmosphere that they would provide for the children. They described activities their family participated in and places where they took the children. They said that Murray's children were shy about participating in any new activity and had not been taught many pre-school educational concepts.
It was revealed that Mrs. Murray and Ms. Barrios were involved in two separate altercations, both in front of the children, which occurred while the Murrays were still married but physically separated. During one of the encounters, physical blows as well as verbal assaults were involved. For some six months prior to the hearing Ms. Barrios did not visit Mrs. Murray's house nor had the two spoken to each other, because of the animosity existing between them.
Murray questioned the health care Mrs. Murray was providing the children. He disapproved of the pediatrician used since the birth of the older child. He felt that the younger child, who suffered from respiratory ailments and allegeries, should have been referred to a specialist sooner. Both Murray and Ms. Barrios described sores the children had on their bodies.
Mrs. Murray's father and mother, divorced from each other and both remarried, live in New Orleans. These parents testified that they had assisted their daughter in looking for a house, a job and a suitable day care center in New Orleans. All pledged their willingness to support Mrs. Murray and her daughters both financially and emotionally.
Dr. Susan Vigen, child psychiatrist in Shreveport, saw Ashley, the older Murray child, on five occasions in early 1986. Ashley was having trouble separating from her mother when it was time to visit her father. Dr. Vigen suggested a behavior modification program in which both parents participated. It was the opinion of Dr. Vigen that the behavior Ashley exhibited was not unusual for young children of separated parents.
When the trial court requested an opinion on changing the children's domicile, Dr. Vigen stated that a change from mother to father would be a big adjustment. Here, another influential factor would be the blending of two families. Describing Mrs. Murray as a good role model, Dr. Vigen said she had advised the parents to be clear and consistent with the children.
Concluding that a change in designation of the domiciliary parent from the mother to the father would not be in the children's best interest, the trial judge denied the father's motion and signed a judgment to that effect on April 14, 1987. Furthermore, Mrs. Murray was permitted to move with the children to New Orleans. Since no request for sole custody had been made, the joint custody was continued.
On February 23, 1987 Murray filed a rule for contempt against Mrs. Murray for taking the children to New Orleans on Murray's scheduled visitation weekend. Mrs. Murray responded by filing a rule against Murray for contempt for failure to pay past due child support, for an injunction to stop harrassment, and for sole custody of the two children. These same requests were made in a new rule filed by Mrs. Murray on March 6, 1987.
At the trial of the rules on March 19, 1987 the only witnesses present were the *757 parties. Mrs. Murray testified that she called her former husband and requested that he trade weekends with her so she could go to New Orleans for a job interview and take the children to see their new house. She stated that Murray objected to the change in visitation, but gave no specific reason for the objection. Murray testified that he had made plans for that visitation weekend.
The parties agreed that they habitually disagree, but each blamed the other.
Both parties dismissed their rules for contempt. Ruling on the request for termination of joint custody and the award of sole custody to Mrs. Murray, the trial judge noted the long history of disputes between the parties and concluded that joint custody was not working satisfactorily. Consequently, it was his opinion that it was in the best interest of the children to award sole custody to their mother. This judgment was signed on March 23, 1987.
In appealing both judgments, that denying the change of domiciliary parent to him and the award of sole custody to Mrs. Murray, Murray asserted 1) the trial judge unduly restricted his presentation of evidence and 2) the trial judge erred in denying the father's request and in granting the mother's motion to be appointed sole custodian.
With reference to the complaint about the trial judge's rulings on admission of evidence, instances are cited to illustrate the argument. Without discussing them in detail, it appears that most offerings were denied either as being irrelevant or simply cumulative.
La.C.C.P. Article 1631 provides that the court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
In our examination of the record and appellant's complaints on this issue, we are unable to find any instance where the trial judge abused his wide discretion.
The complaint concerning the termination of joint custody and the award of sole custody to Mrs. Murray requires a more detailed discussion.
Our civil code establishes a rebuttable presumption that joint custody is in the best interest of a minor child. Article 146(C). Joint custody may be terminated upon a showing that this is in the best interest of the child. Article 146(E).
However, the party seeking the modification of a custody decree bears the heavy burden of proving that continuation of the present custody is so deleterious to the child as to justify modification of the custody decree, or of proving by clear and convincing evidence that the harm that is likely to be caused by the change in environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Joint custody means a physical sharing of the child in addition to both parents' participation in decisions affecting the child's life. Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir.1983).
For joint custody to work, each parent must be willing and able to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. Sepulvado v. Sepulvado, 474 So.2d 518 (La.App. 3d Cir.1985); Long v. Long, 458 So.2d 662 (La.App. 3d Cir. 1984).
The Louisiana Supreme Court has ruled that the parents' inability to settle their differences amicably or to protect the minor children from their battles was one of the "other factors" which must be considered in rebutting the presumption in favor of joint custody under Article 146. Turner v. Turner, 455 So.2d 1374 (La. 1984). The court commented:
"The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health which are the judge's very purpose in child custody cases. He must protect the child from the harsh realities *758 of the parents' often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child's interest."
A requisite element in any joint custody arrangement is that the spouses be able to set their differences aside and cooperate to carry out the joint custody plan. Where the testimony of the parties suggested that sufficient animosity and rancor existed between them such that the parties could not work together to the extent required in a joint custody arrangement, sole custody was mandated. Preau v. Preau, 499 So.2d 1270 (La.App. 4th Cir.1986).
To require a party to show a change in circumstances which materially affect the child's welfare before changing a custody decree that has been fully litigated, protects the other party and the child from the vexation and expense attending multiple unjustified lawsuits, conserves judicial resources, and fosters reliance on judicial actions by minimizing the possibility of inconsistent decisions. It is undesirable to change a child's established mode of living except for imperative reasons. Bergeron v. Bergeron, supra; Montelbano v. Montelbano, 415 So.2d 303 (La.App. 2d Cir. 1982), writ denied, 420 So.2d 163 (La.1983).
In this case the record is clear that, since the rendition of the joint custody decree, the relation between the father and mother has been marked by hostility and acrimony, with neither party expressing a willingness to set aside personal differences for the benefit of the children. The parties experience difficulty in communicating with each other. Relations between the mother and the father's second wife are tense. We agree with the trial judge that, in this case, joint custody has proved unworkable.
These two small girls, by termination of joint custody, are not being removed from a stable environment, as was being attempted in Bergeron. They will continue living with their mother, with whom they have resided since birth. In New Orleans they will have the support of the mother's extended family. Perhaps this will terminate continual and expensive litigation that has taxed the parties both financially and emotionally, and is certainly not in the best interest of the children.
For these reasons, we find that the trial judge did not abuse his discretion in denying Murray's motion to be designated domiciliary parent and in granting Mrs. Murray's motion to terminate the joint custody and be awarded sole custody.
Consequently, the judgments are AFFIRMED, at appellant's cost.