527 So.2d 1030 (1988)
Donovan Wilbur BAILEY, M.D., Plaintiff-Appellee,
v.
Laurie Myers BAILEY, Defendant-Appellant.
No. 19653-CA.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1988.
Rehearing Denied July 7, 1988.
Writ Denied August 8, 1988.
*1031 Jerry L. Jones, M. Randall Donald, Monroe, for defendant-appellant.
McGlinchey, Stafford, Mintz, Cellini & Lang by James C. Crigler, Jr., Lake Providence, for plaintiff-appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
SEXTON, Judge.
Defendant-appellant, Laurie Bailey appeals the judgment changing the original joint custody decree to provide that the parents retain joint custody of their five-year-old child, but changing the primary residential parent to the father, Donovan Wilbur Bailey, M.D. We reverse in part and amend in part.

FACTS
Donovan Wilbur Bailey, M.D. and Laurie Myers Bailey were divorced on July 24, 1984. By consent judgment, the parties were granted joint custody of their minor child, Donovan Myers Bailey, with Laurie Bailey having primary residential care of the child. She was also awarded $300 per month for child support by consent.
By agreement between her and Dr. Bailey, visitation rights on weekends for Dr. Bailey were expanded to Thursday through Monday of every other weekend.
On August 19, 1986, Dr. Bailey filed a rule for change of custody and reduction in child support. Specifically, Dr. Bailey sought to be named the primary residential custodian. He claimed that because of his remarriage, he could provide a more stable home environment for the child. He additionally alleged that the defendant, Ms. Bailey, attempted to retard the development of a close relationship between the child and himself by refusing to allow the child to visit as provided by the judgment. He finally claimed that he was better equipped to provide food, clothing, and shelter and that he could provide a better family atmosphere for the child.
Ms. Bailey reconvened for sole custody and an increase in child support.
The trial judge granted the change of custody and raised the child support to $400 per month when the child was residing with the mother. Laurie Bailey appeals that judgment. She specifically alleges that the trial court erred in changing the primary residential care to Dr. Bailey as such change is not in the best interest of the child. She argues that the trial court abused its discretion in removing young Donovan from a stable environment in which he had been residing for a period of over three and one-half years and that the trial court abused its discretion in placing too much emphasis on the financial ability of Dr. Bailey. Finally, appellant argues that the trial court erred in failing to increase the award of child support to an amount greater than $400.
The original joint custody decree in this case was uncontested. Where no "considered decree" of custody has been rendered, the test applied in the change of custody action is "best interest of the *1032 child." Murray v. Murray, 521 So.2d 754 (La.App. 2d Cir.1988); Risher v. Risher, 511 So.2d 1220 (La.App. 2d Cir.1987); Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir.1986).
Stability of environment is a factor which should be taken into account to determine what is in the best interest of the child. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Everett v. Everett, 433 So.2d 705 (La.1983); Dungan v. Dungan, supra.
Both parties in this case presented evidence relating to the quality of life at their residences. The testimony demonstrated that plaintiff, Dr. Donovan Bailey, is presently married to Diana Bailey. The parties have been married for eighteen months. They reside in Lake Providence, Louisiana with Diana's three children born of a prior marriage for which she is the primary custodial parent during nine months of the school year. Dr. Bailey enjoys an excellent medical practice in Lake Providence and earns approximately $8,000 per month. Diana Bailey works as his nurse and makes $900 per month. Dr. Bailey's current marriage is his third, his marriage to Laurie being his second. He has three children born of his first marriage, two of which have reached the age of majority and the third of which lives with his first wife.
The testimony demonstrated that Laurie Bailey remains single after her divorce from Dr. Bailey but has been married three times, the last marriage being to Dr. Bailey. She presently resides in Bernice, Louisiana, where she is employed as a licensed practical nurse and earns approximately $1,000 per month. She obtained her nursing degree after her divorce from Dr. Bailey. She purchased her own home in Bernice with the help of government subsidies. She presently works the night shift at a local nursing home and makes arrangements for Donovan to stay with her parents, who live nearby, approximately three to four nights per week. Ms. Bailey shares breakfast with her son or picks him up in the morning depending upon how tired she is after her shift. The parents of Laurie are 69 years of age and her father has some heart problems.
Both parties presented expert evidence relating to the custody of Donovan. Dr. Paul Ware, expert for Laurie Bailey and an expert in the field of psychiatry with extensive training in child and adolescent psychiatry, noted that Laurie's work schedule was quite a good one in light of the child's age as the mother could spend evenings with the child and put him to bed, an important aspect of a small child's life. This, he noted, promotes feelings of security. He noted that the child appeared normal and was of medium to high intelligence. Dr. Ware felt that Laurie Bailey was showing signs of stress at his examination which he related to the threatened change in custody. He acknowledged that Laurie had trouble in relationships and tended to be too dependent upon people. Dr. Ware felt that the child should remain with Laurie Bailey because before a child reaches the age of six, he doesn't recommend that the child stay away from the primary home to which he is accustomed for more than a short time. He felt that Laurie Bailey had a good relationship with the child and that changing the primary residence at this time would not be in the best interest of the child. He noted problems with the sleeping arrangements as it was apparent that the child would either sleep with his grandparents or his mother. He made recommendations, however, to Laurie Bailey, who is now attempting to rectify the situation.
Dr. Bailey likewise presented expert evidence, the testimony of Dr. Bobby Stephenson, a licensed psychologist, who evaluated all three parties to the case. He noted problems in the sleeping arrangements as well. He, however, found no major problems in either of the parents' ability to be an effective parent. Dr. Stephenson noted that Laurie Bailey had tendencies to be too dependent and needed greater stability in her life. Dr. Stephenson admitted that a child of Donovan's age needs lots of stability but felt that the stability would be found in Dr. Bailey's home as opposed to Laurie Bailey's home.
Less than favorable testimony was heard concerning both the plaintiff and the defendant in this matter. Dr. Bailey acknowledged, *1033 and certain witnesses testified, that he had been involved in certain altercations with his present wife's ex-husband. Dr. Bailey claimed that the ex-husband instigated the altercations. The testimony also revealed that Dr. Bailey's grown children had also been involved in several incidents while growing up which put them at odds with the law. These incidents generally concerned drinking habits and the destruction of private property. There was another incident in which Dr. Bailey was involved relevant to one of his grown daughters wherein he was charged with the slashing of tires on an automobile.
The testimony of Ann Gardner, a friend of Laurie Bailey, revealed that Laurie had been seen in the company of an individual who had a "reputation for drinking." She testified that this individual, Danny Telford, slapped Donovan on his back at a festival. Additionally, Carol Bennett testified that she saw Laurie Bailey at the Running Cafe Corral where Ms. Bailey appeared to be drunk and boisterous. Laurie Bailey denied these assertions, contending that the parties have a grudge against her over some past altercation.
The trial court attached importance to the family-type environment to which Donovan was exposed at Dr. Bailey's home in addition to the fact that Donovan would have the companionship of other siblings. The court reflected that Donovan would experience a more steady routine in his life concerning school, discipline and bedtime. Further, he would be housed primarily in one residence, rather than being shuffled back and forth between his mother and grandparents. The trial court additionally determined that Donovan would have excellent educational opportunities in a private school in Lake Providence and that Dr. Bailey's financial circumstances were excellent. She finally felt that Laurie Bailey's parents should not be burdened with the care of such a young child considering her father's health problems.
In the present case, stability of the child's environment becomes an important factor in the determination of which parent should be given primary residential custody. Donovan has lived with his mother for the entire five years of his life and has grown accustomed to her routines. From this record, we cannot determine that the best interest of the child mandates the change in custody that the trial judge decreed. While the only test is the best interest of the child, as the previous decree was not a considered one, stability of environment is nevertheless an important factor. A change from a stable environment should not be made absent a compelling reason. Dungan v. Dungan, supra; Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir.1977), writ denied, 352 So.2d 236 (La. 1977). A particular consideration is the length of time the child has been with the parent and this child has been with his mother the entire five years of his life.
Two of the trial judge's considerations, Dr. Bailey's superior financial circumstances and the private school opportunities with Dr. Bailey, are inappropriate considerations. Ms. Bailey's financial circumstances and her home in general are certainly adequate. The fact that one parent is better off financially and can provide a better home and a larger degree of material benefits is not a factor for consideration where the other home is adequate. Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir.1984). Moreover, the non-domiciliary parent has the obligation to provide a level of support equal to that available if the child were housed in the residence of the non-domiciliary parent. Ducote v. Ducote, 339 So.2d 835 (La.1976); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); Culpepper v. Culpepper, 514 So.2d 701 (La.App. 2d Cir.1987); Sims v. Sims, 457 So.2d 163 (La.App. 2d Cir.1984).
The trial court's concern that Ms. Bailey's parents are burdened with the care of the young child also seems inappropriate. We find nothing in the record to indicate that the grandfather's health problems are sufficiently significant to affect the care of the child when he is with the grandparents. Also, Dr. Bailey is obviously a busy individual. The primary nurturing the child will receive when in Dr. Bailey's home when Dr. Bailey is at work will be from Dr. Bailey's new wife. We fail to see why this is a better circumstance than the nurturing *1034 the child receives from his own grandparents when he is in the custody of Ms. Bailey and Ms. Bailey is at work. The opportunity to foster fraternal relationships with his father's stepchildren is certainly an appropriate consideration, but we fail to see how that opportunity presents a more favorable circumstance than the love and affection of grandparents.
Certainly, the factors of the "more favorable family type environment," the "more steady routine," and the housing "primarily in one residence" noted by the trial judge are important ones. Equally important, however, is that there is no evidence in the record to demonstrate that the present home life has been detrimental to the child. Dr. Ware testified that Laurie Bailey's work schedule was actually good for the child as the mother could spend quality time with Donovan at important times of the day. There is additionally an indication in the record that when Donovan begins kindergarten, Laurie Bailey will begin working the day shift to enable her to be home when the child returns from school.
Thus, in the final analysis, the issue is the stability of daily environment (which appears superior at Dr. Bailey's residence) as opposed to the stability of remaining in the present long-term environment (at his mother's home). In this particular case, we opt for the latter, believing that there is no showing that the child's current routines have been detrimental or that they are extreme. We determine that the long-term stability of environment the child has had with his mother is a more important consideration than an improved "daily routine" at Dr. Bailey's residence. More succinctly, there is no compelling reason to remove this child from a competent three and one-half year environment to obtain a somewhat better daily routine.
Therefore, the judgment of the trial court with regard to primary custody will be reversed and the previous custody decree implemented.
Appellants further argue that the trial court erred in failing to increase the child support judgment to at least $700 per month. The trial court in this case increased the payments from the original order of $300 to $400 per month after reviewing the evidence.
In alimony and child support matters, the litigant requesting the adjustment in the prior award must prove a change in the financial condition of either one of the parties, and such rule also applies for the award in a consent judgment. Gennaro v. Gennaro, 306 So.2d 756 (La.App. 4th Cir. 1975).
Ms. Bailey claims that the parties agreed to the low amount in the original award as she was allowed to live free of charge in the couple's house until it was sold. Dr. Bailey also agreed to pay for Laurie's tuition, utilities, gasoline, and certain other expenses while she was in school. She claims that now that she is out of school, she is responsible for each of these expenses, and should be entitled to an increase in the child support payments. At this time she is making over $900 per month in addition to the $400 that the trial court awarded.
The testimony of Dr. Bailey was vague with respect to his expenses and no affidavit was presented. Apparently, a number of his routine expenses are paid by his medical corporation, including a salary to each of his two grown daughters. It is our further understanding that the car notes for him and his wife, their medical insurance and gasoline allowance are paid by the medical corporation.
Dr. Bailey has remarried since the original judgment and provides tuition for one of his daughters who is attending college in addition to the child support payment he still provides for his youngest daughter. Although he has remarried, his wife receives child support payments from her ex-husband for each of her three children in the amount of $300. Dr. Bailey draws a salary of approximately $8,000 per month from his medical corporation. There is no evidence as to the extent of Dr. Bailey's year-end dividend, or whether one in fact is generally paid. The current Mrs. Bailey also receives a $900 a month salary from the medical corporation.
Dr. Bailey testified that his expenses include approximately $2,400 a month in *1035 housenotes. As we understand it, he is paying a note on a house in Farmerville, Louisiana that is unoccupied as well as the note on his residence. He further stated that the expenses of his wife's three children were at least $900 more a month than the $300 received.
The record in this case reveals that Ms. Bailey has incurred additional financial responsibility since the original custody decree. Her affidavit of income and expenses indicates that she nets approximately $750 a month from a gross of just over $900. This salary plus the $300 child support gives her an income of approximately $1,050. She lists total expenses of just under $1,700, all of which seem routine and reasonable. She testified that her parents help her financially to enable her to meet these needs.
In her expense affidavit, Laurie Bailey itemizes approximately $175 in expenses specifically for the child alone, such as educational expenses, clothing and haircuts. However, she allocates none of the rent, insurance, utilities, groceries, automobile expense and household maintenance and upkeep to the child. These expenses total approximately $1,000.
Although the trial court increased Ms. Bailey's child support from $300 to $400, we determine that this sum is insufficient to adequately provide for the needs of the child. Dr. Bailey has a generous income and apparently many of his major expenses are borne by his corporation. While his exact income circumstances are not as clear as we would like, it seems apparent that he should bear a significantly larger portion of the cost of raising his son. Therefore the trial court judgment increasing the monthly child support payments to $400 is amended to increase the payments to $650 per month with the provision that the payments are provided only during those months in which Ms. Bailey has primary custody of Donovan.
The judgment of the trial court changing primary residential custody to Donovan Wilbur Bailey, M.D. and increasing child support payments to $400 per month is reversed in part and amended in part to read as follows:

DECREE
IT IS ORDERED, ADJUDGED AND DECREED that LAURIE MYERS BAILEY and DONOVAN WILBUR BAILEY, M.D. are awarded joint custody of the minor child, DONOVAN MYERS BAILEY, with LAURIE MYERS BAILEY having primary residential custody, and DONOVAN WILBUR BAILEY, M.D. having liberal visitation rights as provided for in the original judgment of divorce rendered July 24, 1984.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendant-appellant, LAURIE MYERS BAILEY, and against plaintiff-appellee, DONOVAN WILBUR BAILEY, M.D., condemning DONOVAN WILBUR BAILEY, M.D. to pay to LAURIE MYERS BAILEY the sum of SIX HUNDRED AND FIFTY and No/100 DOLLARS ($650.00) per month for the maintenance and support of the minor child, DONOVAN MYERS BAILEY. In addition, DONOVAN WILBUR BAILEY, M.D. shall also provide and maintain at his sole expense medical insurance with regard to said minor child and in addition shall pay any and all medical expenses of the said minor child, and DONOVAN WILBUR BAILEY, M.D. shall provide life insurance for which the said minor child is the beneficiary in an equal amount to that provided to any of his other children.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs are assessed against plaintiff-appellee, DONOVAN WILBUR BAILEY, M.D.
REVERSED IN PART, AMENDED IN PART AND RENDERED.

ON APPLICATION FOR REHEARING
Before HALL, FRED W. JONES, Jr., SEXTON, NORRIS, and LINDSAY, JJ.
Rehearing denied.