569 So.2d 267 (1990)
Larry Raymond TOLAR, Plaintiff-Appellant,
v.
Tammy Kay Hutton TOLAR, Defendant-Appellee.
No. 21,815-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*268 Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for plaintiff-appellant.
Linda Bradley Norwood, West Monroe, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
The defendant-in-rule/father appeals the district court judgment modifying the joint custody plan by which he and his ex-wife, the plaintiff-in-rule/mother shared the custody of their minor child, a 4-year-old boy, by naming the mother as the new domiciliary parent. We affirm.
The parties married on March 22, 1985, and their son, Trevor, was born on November 14, 1985. The parties experienced a substantial amount of discord during their brief marriage, which culminated when they separated in late July 1986.
On August 31, 1987, the appellant filed suit for divorce on the basis of the parties having lived separate and apart for over one year, asking that he be awarded the sole custody of his son. However, shortly thereafter, he filed an amended petition, alleging that joint custody would be in the best interest of the child. On October 21, 1987, the parties were divorced and were awarded the joint custody of their son, with the appellant/father named as the domiciliary parent of the boy by consent.
With the appellant as his domiciliary parent, the boy continued to live in West Monroe in the same house where he had lived since birth, approximately two miles from his paternal grandparents and in the same community as his maternal grandfather. Although there was a structured joint custody plan in place, the parties amicably deviated from the plan when its structure conflicted with the plans or circumstances of either party or the child.
The child's maternal grandmother died as a result of a brain tumor shortly after the parties' divorce. Appellee testified that the amount of time required of her during the diagnosis and treatment of her mother contributed to her agreeing to permit the appellant to be the domiciliary parent. Appellant testified that his ex-wife had turned over custody of the boy because she could or would not manage him. The appellee denied this during her testimony.
The appellee remarried in March 1989 establishing a matrimonial domicile in Bossier City, and on May 2, 1989, she filed a petition to modify the joint custody plan, seeking to have herself named the domiciliary parent. During the summer of 1989, the parties followed the written joint custody plan, whereas before they had liberally *269 and frequently deviated from the plan in order to accommodate each other's desires for visitation with the child.
At the hearing on the mother's petition, both sides presented evidence in support of their respective cases, including character witnesses who presented varying and sometimes conflicting testimony regarding the two parties. Additionally, teachers and supervisors from two different day care centers which the child had attended in West Monroe and Bossier City testified regarding the child's development and problem areas in that regard.
Following the conclusion of evidence, the district court orally noted the strong and weak points of the parties' respective cases. The court noted that continuity of environment favored the father continuing as domiciliary parent, while the wife's remarriage supported a modification of the joint custody plan in order to provide the boy with a stable mother-father residential environment. After briefly taking the matter under advisement, the district court ruled in favor of the mother and reversed the established roles of domiciliary and non-domiciliary parent.
The father now appeals, arguing that the mother failed to meet her burden of proving that there had been a material change in circumstances, that the father was unfit to continue as domiciliary parent, and that it was in the best interest of the child to have a new domiciliary parent named.
In all cases involving change of custody after an original award, permanent custody of the child shall be granted to the parents in accordance with LSA-C.C. Art. 146. LSA-C.C. Art. 157. Any order for joint custody may be modified if it is shown that the best interest of the child requires modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification. LSA-C.C. Art. 146 E.
In written reasons in support of judgment, the district court found that the domiciliary parent should be changed from the appellant to the appellee because her remarriage reintroduced stability into her life which had been diminished during the breakup of her marriage to the appellant and the death of her mother. The court further found that the appellee and her new husband offered the child a normal, stable family environment with both male and female participants.
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Where, however, no evidence was adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree was not a "considered decree" within the meaning of Bergeron. Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir. 1986); Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987); Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir.1988), writ denied, 528 So.2d 565 (La.1988); McGee v. McGee, 552 So.2d 576 (La.App. 2d Cir.1989). In those cases a party seeking to modify the joint custody arrangement must still prove a change in circumstances since the original decree, but the heavy burden of proof requirement is not applicable. Foy v. Foy, supra; Meredith v. Meredith, 521 So.2d 793 (La.App. 2d Cir.1988).
In the instant case, the original joint custody decree was entered by the consent of the parties. It was therefore not a "considered decree," and the "heavy" burden of proof required by Bergeron is not applicable. Accordingly, the appellee was required to prove that there had been a material change in circumstances since the entry of the original decree and that the modification which she proposed was in the best interest of the child.
*270 Stability of environment and continuity is a factor which should be taken into account to determine what is in the best interest of the child. Bailey v. Bailey, supra; Geisler v. Geisler, 506 So.2d 1332 (La.App. 2d Cir.1987); Dungan v. Dungan, supra.
As we noted earlier, the trial court was primarily influenced by the family atmosphere now available in the mother's home. However, appellant counters with our Bailey v. Bailey, supra, in which we reversed a change of custody the trial court granted in favor of the recently remarried father. In that case, the mother had had the child approximately three and one-half years. Our reversal was in the following terms:
Thus, in the final analysis, the issue is the stability of daily environment (which appears superior at [the father's] residence) as opposed to the stability of remaining in the present long-term environment (at his mother's home). In this particular case, we opt for the latter, believing that there is no showing that the child's current routines have been detrimental or that they are extreme. We determine that the long-term stability of environment the child has had with his mother is a more important consideration than an improved "daily routine" at [the father's] residence. More succinctly, there is no compelling reason to remove this child from a competent three and one-half year environment to obtain a somewhat better daily routine.
Bailey, supra at 1034.
Our holding, then, was that while the standard was best interest of the child, there should be a compelling reason to uproot the child from a stable environment and that remarriage by itself did not present such a compelling reason.
In the instant case, the child resided with both parties while they were living as husband and wife until their separation in July 1986 when the child was approximately eight months old. At the time of the parties' divorce, they agreed to a joint custody arrangement with the father as the domiciliary parent.
Following the separation, the child continued to spend approximately one-half of his time with each of his parents, with minor fluctuations in that arrangement as the needs of the appellee's work schedule and the appellant's school schedule required. Accordingly, roughly the first two years of the child's life were spent as much with one parent as with the other. This arrangement continued from the time of the parties' divorce in October 1987 until October 1989, at which time the district court modified the joint custody arrangement to name the mother as the new domiciliary parent.
At the time of the hearing on the rule to modify, the mother and her husband were living in Bossier City. Both were employed full-time. The stepfather's job required that he be out of town periodically as a federal examiner of financial institutions.
The father continued to reside in the same home where he and the child's mother had lived as husband and wife. Because he was a full-time university student with only part-time employment, he was compelled to rent out one room of the house to a friend in order to make ends meet.[*] This house is situated on a dead-end street and the parties testified in somewhat contradictory terms regarding the relative quality of the neighborhood. Suffice it to say, however, the record does not indicate that the neighborhood was undesirable or unacceptable for a small child.
Appellant lived not far from his parents and in the same community as the appellee's father. The child continued to attend the same day care in which he had been first enrolled in April 1987.
The instant circumstances seem to this point to be similar to Bailey v. Bailey, supra. There is one additional factor demonstrated by the record which distinguishes this case. The veteran nursery school teacher in Monroe, Mrs. Nolan, who taught at the school the child attended when under *271 the father's domiciliary care, testified that the child's personality was not as well-developed as his peers. She noted that he did not make complete sentences, did not perform his nursery school assignments, lacked self-confidence, had no friends among the other children, and required her continual assistance in the placing of his papers "on his shelf," contrary to the other children. In contrast, the nursery school teacher in Bossier City, who taught at the school the child attended when in the mother's domiciliary care, failed to note these difficulties. She also testified that the child's communication skills regressed after he had been with his father for summer visitation. This teacher is not as experienced as the Monroe teacher, having spent only one year in day care. However, she has three daughters of her own, between 17 and 19 years of age. She has "worked with children for the past six years."
It should be noted that she testified that the child had some difficulty adjusting to this day care for the first couple of weeks. He was initially incommunicative and would cry on occasion. Of interest, the day care teacher in Monroe testified the child never cried there.
In the oral comments the trial court noted that the contest was between maintaining the stability of the status quo with the father and the family environment with the mother. Unfortunately, the trial court in its oral comments at the end of the evidence and in its written opinion did not comment on this evidence. However, it appears that inherent in the trial court's choice is a determination that the record indicated that the child performed better in familial surroundings and thus it was in the child's best interest for the mother to be domiciliary custodian.
While we believe the matter to present an extremely close question, particularly in the light of Bailey, we conclude that the record presents something more than a simple conflict between the status quo versus remarriage. We therefore conclude that there is a change of circumstances and a sufficiently compelling reason for a change in this previously unconsidered custody case. Thus, the trial court did not abuse its discretion.
The judgment of the trial court is therefore affirmed at appellant's cost.
AFFIRMED.
NOTES
[*] Appellant's testimony at the hearing on the rule indicated that he would be completing his college degree in the spring of 1990.