521 So.2d 793 (1988)
Richard D. MEREDITH, Plaintiff-Appellee,
v.
Linda Sue Cain MEREDITH, Plaintiff-Appellant.
No. 19366-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
*794 Barnes and Jefferson by Stephen A. Jefferson, Monroe, for plaintiff-appellant.
Paul B. Wilkins, Columbia, for plaintiff-appellee.
Before HALL, C.J., and JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
The father of two minor children filed a rule seeking to obtain custody from their mother, who had sole custody. The trial court awarded joint custody of the children to the parents, with the mother being made the domiciliary parent of the older female child and the father being made the domiciliary parent of the younger male child. The mother appealed the trial court judgment, claiming that the trial court erred in dividing or "splitting" the custody of the children. The father answered the appeal, claiming that the trial court erred in not making him the domiciliary parent of both children. For the following reasons, we affirm the judgment of the trial court.

FACTS
The parents, Richard D. Meredith and Linda Sue Cain Meredith Pierce, were divorced in Caldwell Parish by a judgment rendered on January 27, 1983. The mother was awarded custody of the two minor children, Katie (who was born in 1974) and John (who was born in 1977). In June, 1983, Mr. Meredith remarried. On July 7, 1983, Mr. Meredith filed a rule to show cause why his visitation rights should not be specifically set. A judgment was rendered on August 19, 1983, detailing the father's visitation rights in compliance with an agreement reached by the parties.
In July, 1984, the mother took the children and moved to Monticello, Arkansas to remarry. The father retained his residence in Columbia, Louisiana. In September, 1984, the mother married Rickey Pierce. Shortly after the move, disharmony and bitterness arose between the parents, primarily concerning visitation with the children and their care. The distance between the residences of Mrs. Pierce and Mr. Meredith requires a three-hour drive in each direction. The children, uprooted from the area in which most of their relatives and friends live, had considerable difficulty adjusting to the move. In particular, John's grades suffered substantially, and he began to show signs of having learning problems. In June, 1985, the children were found to have serious oral hygiene problems. John had cavities in ten teeth, which necessitated the removal of two teeth and the installation of a crown over another tooth. Katie also had several cavities. The dentist, who is also Mr. Meredith's brother, indicated that the children apparently were not receiving sufficient dental care while in their mother's sole custody.
As time passed, other family strife occurred. For example, in June, 1986, Mrs. Pierce and Mrs. Shirley Meredith, the father's present wife, were involved in an incident at a Columbia ballpark where a *795 little league baseball team coached by Mr. Meredith was playing a championship game. Mrs. Pierce testified that she was talking to young John when Mrs. Meredith approached them, pulled the boy from her arms, and stood between them. To the contrary, Mrs. Meredith testified that she merely placed her hand on John's shoulder and leaned over to talk to him. She stated that Mrs. Pierce yelled profane language at her, ordering her to not touch the boy. Then Mrs. Pierce grabbed John by his baseball jersey, spun him around, and pulled him over to the dugout where his father was coaching. Deputy Sheriff Joe Fore, a ballpark spectator, substantially corroborated Mrs. Meredith's version of the incident. Following this incident, Mrs. Pierce filed charges of assault and battery against Mrs. Meredith.
Shortly thereafter, Mrs. Pierce's uncle, Floyd "Slim" Hodges, the Sheriff of Caldwell Parish, arranged a meeting between the parties to discuss extending the children's summer visitation with Mr. Meredith and concerning the charges filed against Mrs. Meredith. This meeting was unsuccessful and no resolution was reached. At a subsequent meeting, Mrs. Pierce's husband represented her and agreed on her behalf that the children could stay in Columbia until the end of the summer of 1986.
At the end of the summer, another dispute arose between Mr. Meredith and Mrs. Pierce, this time concerning when the children would return to Arkansas. Mr. Meredith wanted the children to stay with him until immediately before the beginning of school. Mrs. Pierce, however, wanted the children returned to her about two weeks before school began. In order to avoid returning the children, the Merediths and the children took an impromptu trip which included stops in Alexandria and Baton Rouge, Louisiana; Natchez, Mississippi; and Florida.
On August 7, 1986, Mr. Meredith filed a rule for change of custody in which he requested that he be given custody of Katie and John. Mr. Meredith alleged that the move to Arkansas had been detrimental to the children, particularly to John. Mrs. Pierce answered the rule, requesting that Mr. Meredith be held in contempt of court for his refusal to return the children to her at the end of their summer visit with him. On August 27, 1986, a hearing was held, at the conclusion of which the trial court took the matter under advisement.
On September 24, 1986, Mr. Meredith filed a motion to take additional evidence, in which he alleged that Mrs. Pierce and her present husband had engaged in an altercation at a lounge in Columbia, Louisiana, about three weeks after the initial hearing. On February 5, 1987, a second hearing was held.
The evidence adduced at the second hearing showed that on September 13, 1986, Mr. and Mrs. Pierce were at the City Lounge in Columbia, Louisiana, when a fight occurred. According to the majority of the witnesses, Mr. and Mrs. Pierce were both aggressors in the incident. As a result of this barroom fight, warrants against the Pierces for simple battery were issued and were still active at the time of the second hearing, although the warrants had not been executed. At the second hearing, Mr. Pierce testified that he, Mrs. Pierce and the children were then living with his parents.
On February 23, 1987, the trial court handed down its written opinion. The trial court found that since the rendition of the previous custody decree, a change in circumstances had occurred in two respects: the improvement of Mr. Meredith's attitudes as to his moral, religious, and social obligations toward his children; and the move to Arkansas. The trial court found that Mrs. Pierce had been an aggressor in the barroom fight, and that the incident demonstrated her disregard for acceptable standards of social behavior, particularly at a time when she knew her conduct was under the scrutiny of the court. Nevertheless, the trial court obviously believed that Mrs. Pierce was still a fit and loving parent who could continue to provide for the needs of Katie. The trial court noted that Katie had properly adjusted to her new environment in Arkansas, and had become settled *796 and emotionally established. The court felt that Katie's continued residence in Arkansas with her mother was in her best interest. However, the court also felt that John was in need of his father's care and guidance. The court found that Mr. Meredith had displayed a conscious effort to change his moral behavior and that he could provide more guidance and leadership in religious and educational matters.
The court also noted that most of the problems between the parties, and there were many, arose over the continuing struggle involving the children. This situation placed both children in an untenable position.
The trial court awarded the parents joint custody of the children. It recognized the importance of a boy John's age being with his father. Mr. Meredith was named John's domiciliary parent, while Mrs. Pierce was designated Katie's domiciliary parent. In addition to establishing visitation for the non-domiciliary parent of each child, the trial court's joint custody implementation plan allowed for Katie's visitation with her paternal grandmother. The plan also arranged a schedule that would allow the siblings to be together often, especially on major holidays. The judgment and joint custody implementation plan were rendered and signed on February 23, 1987.

LAW
LSA-C.C. Art. 157(A) directs that in all cases of separation and divorce, and changes of custody after the original award, permanent custody of the child or the children should be granted to the parent in accordance with Article 146. LSA-C.C. Art. 146(E) provides that changes in custody shall be awarded according to the "best interest of the child." This is the paramount consideration in child custody matters, including those involving change of custody. Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir.1986); Foy v. Foy, 505 S.2d 850 (La.App. 2d Cir.1987).
In Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), the Louisiana Supreme Court restated the burden of proof in change of custody cases:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
Where no considered decree of custody has been rendered, the heavy burden of proof requirement is not applicable, but there must be a showing of a change in circumstances since the original decree. Foy, supra. Stability of environment is a factor which should be considered in such an action. Bergeron, supra; Dungan, supra; Foy, supra.
In the present case, there is no indication that the issue of parental fitness for custody has been litigated previously. Thus, no "considered decree" has ever been rendered.
Each parent objects to the imposition of "split" custody, contending that both children should be placed with him or her. The separation of children of a family is a custodial disposition which courts should avoid. However, it is sometimes necessary and in the best interest of the child. Wallace v. Wallace, 420 So.2d 1326 (La.App. 3d Cir.1982); Price v. Price, 451 So.2d 1187 (La.App. 1st Cir.1984); Daugherty v. Cromwell, 501 So.2d 955 (La.App. 2d Cir.1987).
Every child custody case must be based on its own particular circumstances. Great weight is given to the trial court's decision which will not be overturned absent the showing of an abuse of discretion. Stephenson v. Stephenson, 404 So.2d 963 (La. 1981); Cole v. Cole, 467 So.2d 872 (La.App. 2d Cir.1985).
The father and the mother stand on equal footing at the outset and the role of the court is to determine the best interest of the child based on the relative fitness and ability of the competing parents in all respects to care for the child. Thornton v. *797 Thornton, 377 So.2d 417 (La.App. 2d Cir. 1979); Wallace v. Wallace, supra.

DISCUSSION
As a result of his interview with the children during the first hearing, the trial court found that both children obviously love both parents. Katie pointedly expressed a preference to live with her mother. While she wants to visit Louisiana often and spend time with her paternal grandmother, Katie does not want to attend school in Louisiana. On the other hand, John wants to live with Mr. Meredith and enjoys the time they spend together engaging in father-son activities.
The evidence justifies a finding that both parents love their children. However, circumstances have changed since the original custody award in the divorce judgment. Both parents have remarried. The mother has moved away from the area of residence of most of the children's relatives, including both sets of grandparents and several cousins of similar ages. The distance between Monticello, Arkansas, and Columbia, Louisiana, has caused considerable problems in facilitating the father's visitation with the children. Cooperation between the parents has been sporadic at best, and there appears to be considerable animosity, not only between the parents, but also between Mrs. Pierce and Mrs. Meredith. Both parents have repeatedly displayed poor judgment in their behavior towards each other.
The children are older now, and their needs have changed accordingly. Katie has adjusted to the move to Arkansas, and wishes to remain there with Mrs. Pierce. However, John has not adjusted. He has displayed a propensity towards learning difficulties. While his mother did enroll him in a reading skills laboratory, his learning problems extend to other areas as well. Mr. Meredith has experience in dealing with educational problems, as he was apparently instrumental in improving his stepson's scholastic performance.
The trial court found that the father could provide a more stable environment for John. We find no abuse of discretion in this determination. At the time of the second hearing, the Pierces were no longer living in a rented house as they were at the first hearing. Instead, they were then residing with Mr. Pierce's family. This would put additional stress on the children if they both remained with their mother. While this living arrangement was not fully explained to the court, it apparently was connected with Mr. Pierce's change or loss of employment.
The best interest of the children mandates that we affirm the trial court's disposition in this case. As the trial court acknowledged, John is at an age when he needs to spend more time with his father. Allen v. Allen, 484 So.2d 277 (La.App. 3rd Cir.1986); Bridgers v. Bridgers, 509 So.2d 793 (La.App. 1st Cir.1987). John is in need of assistance and guidance, particularly in matters of education and discipline. Mr. Meredith can provide a more stable environment for John. Due to the close ties that already exist between John and his father, and to Caldwell Parish, which have been maintained since the move to Arkansas, we do not perceive a detrimental effect on his sense of stability as a result of the trial court's action.
As John is at an age when a close relationship with his father is of great importance, Katie is at an age when a similarly close relationship with her mother is important to her. Katie is a well-adjusted young lady excelling scholastically in her current environment. The joint custody plan implemented by the trial court allows her to maintain her ties in Caldwell Parish, especially her warm and loving relationship with her paternal grandmother, who has apparently been a great source of comfort to Katie throughout her parents' domestic disputes. We find no abuse of discretion in the trial court's decision to allow her to remain with her mother.
Furthermore, the trial court carefully crafted the joint custody implementation plan to guarantee that the siblings will spend a premium amount of time in each other's company. Visitation with the non-domiciliary parent is structured so that the children will be together frequently each *798 month, throughout major school holidays, and for two months in the summer.
We can find no abuse of discretion in the trial court's judgment. The trial court has a superior vantage point in determining the credibility of the witnesses and the suitability of the parents. The trial court was faced with a decidedly difficult child custody case in which the best interests of the children demanded modification of some sort. While separation of siblings is a hard choice, one which we would not frequently approve, it is sometimes mandated by circumstances and the needs of the individual children. Such is the case here. The trial court has conscientiously and correctly acted to maintain the parent-child relationships involved while minimizing disruption of the brother-sister relationship.
We affirm the judgment of the trial court awarding joint custody of the children, with Mr. Meredith being John's domiciliary parent and Mrs. Pierce being Katie's domiciliary parent. Costs of the appeal are assessed one-half to each parent.
AFFIRMED.