552 So.2d 576 (1989)
Bruce Michael McGEE, Plaintiff-Appellee,
v.
Sally Ann Williamson McGEE, Defendant-Appellant.
No. 20933-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
*577 Susan D. Scott, Shreveport, for defendant-appellant.
James L. Fortson, Shreveport, for plaintiff-appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
This civil appeal is brought by Salley Ann Williamson McGee, now Heffern, arguing that the district court abused its discretion in modifying the existing joint custody arrangement with her ex-husband, Bruce Michael McGee regarding the daughter of their former marriage. Because the record before this court does not demonstrate any clear abuse of discretion by the district court, we affirm.

FACTS
In 1986, collateral to the parties' domestic proceeding, Mrs. Heffern and Mr. McGee entered into a consent judgment giving them joint custody of their minor child. The joint custody implementation plan named the mother as the domiciliary parent with her having physical custody of the child on Tuesday through Friday of one week and Monday through Friday of the next week, on an alternating basis. The father had visitation with the child every weekend. Additionally, the mother and father alternated major holidays.
Apparently, the parties implemented a de facto modification of the joint custody plan so that the mother had custody of the child Sunday night through Wednesday and the father had custody of the child Wednesday through Sunday night. Additionally, the father asserts that he took the child to school most mornings, even when the mother had custody of the child.
In late February 1988, following what the father perceived to be a problem between the child and her stepfather, he filed a petition for sole custody. The mother filed her own petition seeking more weekend time with the child and court permission to enroll the child in a school closer to her residence.
*578 Following trial, the district court rendered judgment continuing joint custody, but naming the father as the new domiciliary parent, with the mother being given three weekends per month. Additionally, the parties are to share, in an approximately equal manner, major holidays and the mother is to have visitation with the child for six consecutive weeks each summer, with the father having the child every other weekend during the extended visitation.
Mrs. Heffern now appeals the district court judgment, arguing that Mr. McGee failed to show a change in circumstances sufficient to justify the modification of the original joint custody plan. Mr. McGee argues that the original plan may have been appropriate for a preschool child, but that the new plan ordered by the district court, reflecting the recommendation by the child psychologist who testified, is more appropriate for a school-age child. Additionally, Mr. McGee argues that the violence and marital strife in the home of Mr. and Mrs. Heffern gives additional support for the result reached by the district court.

MODIFICATION OF JOINT CUSTODY
In all cases involving change of custody after an original award, permanent custody of the child shall be granted to the parents in accordance with LSA-C.C. Art. 146. LSA-C.C. Art. 157. Any order for joint custody may be modified if it is shown that the best interest of the child requires modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification. LSA-C.C. Art. 146 E.
In oral reasons in support of judgment, the district court found that joint custody should continue because both parties are good persons and good parents. The main reason given by the district court for the modifications imposed was the effect that domestic disputes between Mr. and Mrs. Heffern were having upon the child. However, the court also made note of the fact that the child had spent most of her time with her father "lately." Finally, the court expressed dissatisfaction with the prospect of a week-on, week-off custody arrangement.
The best interest of the child is the paramount consideration in a change of custody case. Ezell v. Kelley, 513 So.2d 454 (La.App. 2d Cir.1987), on appeal after remand, 535 So.2d 969 (La.App. 2d Cir. 1988); Meredith v. Meredith, 521 So.2d 793 (La.App. 2d Cir.1988). However, to justify a change in custody, there must be a showing of a change in circumstances materially affecting the welfare of the child. Ezell v. Kelley, supra.
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Where, however, no evidence was adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree was not a "considered decree" within the meaning of Bergeron. Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir. 1986); Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987). In those cases, a party seeking to modify the joint custody arrangement must still prove a change in circumstances since the original decree, but the heavy burden of proof requirement is not applicable. Foy v. Foy, supra; Meredith v. Meredith, supra.
In the instant case, the original joint custody decree was entered by the consent of the parties. It was therefore not a "considered decree" and the "heavy" burden of proof required by Bergeron is not applicable. Accordingly, Mr. McGee was required to prove that there had been a material change in circumstances since the entry of the original decree and that the *579 modification which he proposed was in the best interest of the child.
Our review of the instant record, giving great weight to the determinations by the district court as required by Bergeron, discloses no clear abuse of discretion.
The major factor upon which the district court relied was the significant and sometimes violent marital strife existing in the home of Mr. and Mrs. Heffern and the impact which this had upon the child. While the court acknowledged the apparent contrition of the mother and stepfather, it also had the benefit of testimony of several individuals who had observed changes in the child's behavior over a period of several weeks, much of which can be reasonably connected to the disharmony in that home.
Mrs. Mary Grady, the child's kindergarten teacher, sees the child each day from 8:00 a.m. to 2:40 p.m. She testified that some time in December the child began to cry on Mondays and Tuesdays when preparing to leave the school for after-school care at a local facility. She also testified that the child woke up from her nap crying on some of those days.
Mrs. Grady testified that she was familiar with the joint custody arrangements between plaintiff and defendant and testified that the child generally went to her mother's home on Monday and Tuesday and to her father's home on Wednesday, Thursday, and Friday. On those afternoons when Kelly went to the daycare, it was on a bus provided by the daycare. On those occasions when Kelly was going to her father's house for the evening, she would generally be picked up by her father or his sister-in-law. Although Kelly's problems with crying at school began in December, it was not until February of the following year that she expressed to the teacher the problems she had been having.
Dr. Gerald Baker, a clinical psychologist licensed to practice in Louisiana, with emphasis on marriage and family therapy, began to see the child on a weekly basis when Mr. McGee first noticed a problem and continued seeing the child at least until shortly before trial.
When he first became acquainted with the child, she was under duress, agitated, and very scared. He related all of these emotional manifestations to altercations in the home of her mother and stepfather, Mr. and Mrs. Heffern.
During evaluation, the child related to the doctor how her stepfather had torn up some chairs with a knife following an argument with her mother, and that there was arguing and loud yelling between her mother and stepfather. She further indicated to him that she feared being around that type of environment. The doctor was of the opinion that the child was very upset, agitated, and afraid to go back to her mother's home. She wanted to stay with her father. He also testified that she is a sensitive child with a somewhat fragile personality.
With regard to the child's affinity for one parent or the other, the doctor testified that she has a strong affection for her mother and "connects" very well with her. He believes the major concern in this situation is the stepfather. He testified that the child told him that she has asked her mother to leave the stepfather. He further believes that she still needs much contact with her mother but he would be cautious about her interaction with the stepfather.
Based upon the child's preference to be with her father, the doctor recommended that the joint custody plan be modified to place her with her father during the week and to give her mother visitation on most weekends.
Mrs. Nancy McGee, the child's stepmother, testified that there were several occasions when she cried not to return to her mother's house on Sunday afternoons, though she indicated that the crying generally occurred before the trip back to her mother's.
The testimony of Bruce McGee, the child's father, consisted largely of the same details considered by previous witnesses: the arrangements under the existing joint custody plan, the wonderful relationship he has with his daughter, how he and the child generally have breakfast together either at home or at McDonald's on the way to her *580 school, the time they spend together in karate lessons, and other general details.
Mr. McGee testified in more detail about the morning when the child's problem became apparent. Upon his arrival at the home of his ex-wife, he noted that she was dishevelled, contrary to her general appearance at other times. As he was leaving with the child, she told her mother not to let her stepfather back in the house. She then told her father of other fights between her mother and stepfather in the past about which she had been warned not to speak. It was in this context that Mr. McGee decided not to advise the mother about the counseling so as to avoid any problems for the child.
In addition to that specific incident, Mr. McGee testified that Mrs. Heffern had brought the child to his house for extended periods in the past because "it was best" but with no further explanation. On one of those occasions, Mrs. Heffern had a brace on her arm. The child later told her father that her mother had been injured in an altercation with her stepfather, the same incident where her stepfather slashed some furniture with a knife. During her testimony, Mrs. Heffern acknowledged these facts, but indicated that the injury was accidental and resulted when she jerked her arm away from Mr. Heffern.
In addition to the impact of the Hefferns' marital strife upon the child, the child's approaching school age was another significant change in circumstances which influenced the district court. The mid-week change in household which may have worked well for her as a preschooler was thought to be no longer appropriate.
Mrs. Heffern makes much of the fact that her contact with the child has been reduced from approximately 14 or 15 days per month to only 6 days per month. However, as pointed out by Mrs. Heffern in brief, joint custody does not mean an equal sharing of time. Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir.1984); Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984). Additionally, the modified joint custody arrangement also provides for an approximately equal sharing of major holidays and for Mrs. Heffern to have the child for six consecutive weeks each summer; thus, her average number of days per month is actually greater than her argument discloses.

CONCLUSION
Under the circumstances presented, we cannot say that there was a clear abuse of the district court's much discretion. In addition to evidence of a material change in circumstances, the instant record supports the district court's conclusion that the ordered modification is in the best interests of the child.
Having so concluded, we must therefore affirm the district court's judgment.
AFFIRMED.