579 So.2d 1159 (1991)
Wanda Broome COOPER, Appellant,
v.
James Clinton COOPER, Appellee.
No. 22302-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1160 Lawrence L. May, Jr., Vivian, for appellant.
Hall & Golden by W. Eugene Golden, Shreveport, for appellee.
Before LINDSAY, BROWN and STEWART, JJ.
BROWN, Judge.
This action involves a change of custody. A mother of two children appeals from a judgment granting the father sole custody. The mother urges that the trial court committed manifest error in removing the children from the home which she had provided since the parties separated. We find that the trial court was not clearly wrong *1161 in changing custody to the father and affirm the judgment.

FACTUAL CONTEXT
James and Wanda Cooper were married on August 19, 1980. Two children were born of the marriage, Lois Marie Cooper, born February 16, 1981 and James Clinton Cooper, II, born June 16, 1986. The marriage had a stormy history resulting in Wanda Cooper initiating action on August 14, 1986 for separation, child custody, child support and a temporary restraining order.
An agreement in that action was reached and on June 4, 1987, a consent judgment awarded both parties joint custody of the children with Wanda Cooper designated as domiciliary parent. Further, James Cooper was ordered to pay $300 per month in child support.
On October 31, 1988, James Cooper filed for divorce on the grounds of having lived separate and apart for a period in excess of one year. During the pendency of this divorce action, James Cooper filed this rule to change custody. After a trial on the merits, the court ordered a change in custody and that is the issue presented in this appeal.
The testimony established that there were many male visitors in and out of Mrs. Cooper's mobile home who were known to the law enforcement community as drug users. Some witnesses stated the children were neglected and the home was unkempt.
Wanda Cooper admitted that she had been arrested on drug-related charges and for theft but denied using illegal substances. She was not working, testifying that she preferred to stay at home and care for her children. Wanda stated that men did frequent her house and sometimes stayed all night but they only talked and played cards or Nintendo. Her son would stay up most of the night with them while the daughter would sleep in her bedroom so she could attend school the next day. Denying that a boyfriend, Art Malott, lived with her, Wanda admitted that he would stay for a couple of days and then leave. Art Malott died in February 1989 of a possible drug overdose and allegedly had AIDS.
The witnesses testifying on behalf of Mrs. Cooper generally stated that she was a good mother who cared for her children. However, many of these witnesses had previous arrests and convictions for drug-related offenses. The witnesses testified they gathered at her residence to talk and play Nintendo and that no drug usage was involved.
Officer David Wright, a former officer with the Oil City Police Department, testified that he had lived next to Mrs. Cooper. Wright observed frequent daily visitors at the residence with the children running outside unsupervised. Wright removed the children from the street on several occasions. He believed the children were neglected. Wright had arrested Mrs. Cooper for drug-related offenses and stated the people he observed at her residence were known to him as drug abusers.
Joe Morris, a criminal investigator with the Caddo Parish Sheriff's Office, testified that he had arrested Mrs. Cooper in December 1989 on several charges. Morris had also observed Mrs. Cooper's residence on numerous occasions and testified that there was frequent traffic at the home by people known to him as drug users.
On the other side, the testimony established that during the marriage James Cooper had been physically abusive to Wanda. James admitted past drug use as well as a drinking problem. However, he claimed to have been sober for approximately three to four months and had quit using drugs upon the birth of his son in 1986. Although admitting to some abusive behavior, he asserted the cause of the parties' separation was Wanda Cooper's drug use. Since the separation James Cooper has lived with and fathered a child by Nancy Bonnette. He and Ms. Bonnette planned to marry as soon as his divorce was final. Prior to trial, Ms. Bonnette moved from Mr. Cooper's residence supposedly to attend church and make her life "right". Mr. Cooper was currently employed by Sawyer Drilling with a monthly gross income of approximately $2,201.60 and worked seven days a *1162 week, eight hours a day. His shift was 5:30 a.m. to 1:30 p.m. each day.
James Cooper lives in a two bedroom mobile home. His parents live close by and are both retired. Both parents and a sister are available to help with child care while he works but he would be home by the time the daughter returned from school and would care for the children in the afternoon. The testimony established that James was a caring father who took the children to church regularly and spent time in activities with them. He admitted being in arrears with child support but felt the money would have been used by Wanda for drugs.
After reviewing the testimony, the trial court found in favor of James Cooper awarding him sole custody subject reasonable supervised visitation. The court found that the home environment sanctioned by Mrs. Cooper was detrimental to the children and that the mother had her priorities wrong by placing her "fast-track" lifestyle ahead of the welfare of her children.

DISCUSSION
LSA-C.C. Art. 131[1] provides in part that any order for joint custody may be modified or terminated upon petition of one or both parents if the best interest of the child so requires. The court shall state in its decision the reasons for a modification or termination of the joint custody if opposed by either parent. To justify a change in custody there must be a showing of a change in circumstances which materially affects the welfare of the child. Every child custody case must be viewed within its own peculiar set of facts with the paramount goal being the best interest of the child. In all cases involving a child custody judgment, great weight is given to the trial court's decision which will not be overturned on appeal in the absence of a clear abuse of its discretion.
It is well-settled that when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the present custody is so harmful to the child that it justifies a modification or of proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. However, where no evidence was adduced at the trial court level, that decree is not a "considered decree" and in such cases a party seeking to modify the custody arrangement must prove a change in circumstances and that a change in custody is in the best interest of the child. Myers v. Myers, 561 So.2d 875 (La.App. 2d Cir.1990); McGee v. McGee, 552 So.2d 576 (La.App. 2d Cir.1989); Christian v. Christian, 535 So.2d 842 (La.App. 2d Cir.1988); Ward v. Ward, 535 So.2d 782 (La.App. 2d Cir.1988), and Thomas v. Thomas, 519 So.2d 357 (La. App. 2d Cir.1988).
Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. In making its determination, the trial court may also consider the custodial parent's ability to provide moral guidance for the child. In determining the best interest of the child in custody cases, there must be a weighing and balancing of the factors favoring or opposing custody in the respective competing parents on the basis of the evidence presented in each particular case. Weems v. Weems, 548 So.2d 108 (La.App. 2d Cir.1989); Ezell v. Kelley, 535 So.2d 969 (La.App. 2d Cir.1988); Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir. 1986), and Stewart v. Stewart, 430 So.2d 189 (La.App. 2d Cir.1983).
Mrs. Cooper's primary argument on appeal is that the trial court erred in awarding sole custody of the children to Mr. Cooper. As the original award of custody was by agreement, there was no considered decree. Mr. Cooper was thus required to prove that a change of custody was in the best interests of the minor children. After reviewing the record, we find that the trial court did not err in finding *1163 that a change in custody was in their best interests.
Although neither party could be characterized as an ideal parent, the evidence established that Mr. Cooper was making an active effort to "straighten" up his life whereas Mrs. Cooper's misconduct appeared to be worsening. Mr. Cooper admitted to a previous history of drug abuse, alcohol abuse and physical abuse of Mrs. Cooper. However, he has made a strong effort to correct these problems.
On the other hand, the testimony indicated that Mrs. Cooper's drug involvement had apparently continued and was actively and flagrantly conducted in the presence of the minor children. She had been arrested on several occasions for drug offenses and associated frequently with known drug users in the presence of the children. She has made no attempt to alter her lifestyle for the benefit of the children. The testimony established that her home was unclean, the sleeping arrangements for the children were unsuitable and there were frequent visitors in and out of the home at all hours. The children had been observed playing in the street unsupervised and did not appear to have a normal, stable schedule. The testimony further indicated that Mrs. Cooper was involved in a relationship with a man who was allegedly an intravenous drug user and dangerous drug paraphernalia had been observed in the mobile home within easy reach of the children.
While Mr. Cooper works long hours and had problems in the past, the evidence established that he has the potential to be a good and loving father who would take an active role in his children's lives and activities. Mr. Cooper's family lives close by and are willing to care for the children while he is at work. His parents and sister would care for young James during the day and Mr. Cooper would be at home when Lois returned from school. Mr. Cooper could provide the children with a stable and supervised environment. Any harm to the children which could result from their removal from the mother's home is greatly outweighed by the advantages which they would receive by the change in environment.
While Mr. Cooper readily admitted that he had lived with another woman and had a young child with her, we agree with the trial court that this is not a sufficient reason to deny custody. There is no evidence in the record to indicate that this relationship has had a detrimental effect on the children and the parties appeared to have a stable relationship with future marriage plans. Further, Ms. Bonnette testified she was willing to help raise the children. Acts of adultery with the same person do not, per se, render a parent morally unfit who is otherwise suited for custody. See Moore v. Moore, 544 So.2d 479 (La. App. 2d Cir.1989) and Rollins v. Rollins, 521 So.2d 647 (La.App. 1st Cir.1988), writ denied, 522 So.2d 573 (La.1988).
Mrs. Cooper further argues that the trial court erred in its failure to comply with the mandatory requirement of LSA-C.C. Art. 131 to give reasons for a change of custody. A review of the trial court's written reasons for judgment indicates that the mother's lifestyle was the primary reason for the change in custody. The court specifically noted that she had placed her own lifestyle ahead of the welfare of her children. While the trial court did not give a detailed list of its consideration of all the factors enumerated in LSA-C.C. Art. 131, it is clear that the trial court considered these factors in its determination that the best interests of the children mandated a change of custody. The reasons set forth by the trial court are sufficient to satisfy the requirements of the article.
Mrs. Cooper further argues that the trial court erred in its failure to order an evaluation of both homes before determining permanent custody. LSA-C.C. Art. 131 H provides in pertinent part that in a custody proceeding, an evaluation may be ordered on the motion of either party. LSA-C.C. Art. 131 C(3) also provides that the court may direct that an investigation be conducted for the purpose of assisting the court in making a determination whether an award of joint custody is appropriate. Under LSA-C.C. Art. 131 H, *1164 a party must make a motion for an evaluation. In the instant case, Mrs. Cooper did not make such a motion and is thus not entitled to an evaluation. Furthermore, even where a motion has been made, it is discretionary with the court whether to order the evaluation. We further note that an investigation pursuant to LSA-C.C. Art. 131 C(3) is also discretionary.
In the instant case, the trial court apparently had no need of expert testimony or an investigation. From the evidence presented, the trial court was able to determine that the continuation of present custody was not in the best interest of the children and that a change was to their advantage. Thus, Mrs. Cooper's assertion that the trial court erred in failing to order an evaluation of both homes is without merit. Soignet v. Soignet, 546 So.2d 541 (La.App. 1st Cir. 1989).

DECREE
For these reasons, the judgment of the trial court in favor of James Cooper awarding him sole custody of the children with reasonable supervised visitation to Wanda Cooper is AFFIRMED at Mrs. Cooper's cost.
NOTES
[1] LSA-C.C. Art. 146. This article was redesignated as LSA-C.C. Art. 131 pursuant to Acts 1990, No. 1008 § 8 and Acts 1990, No. 1009 § 10.