579 So.2d 1130 (1991)
Jerry Wayne LEE, Plaintiff/Appellee,
v.
Annette Timblin Lee DAVIS, Defendant/Appellant.
No. 22390-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1131 Maurice Loridans, Bossier City, for plaintiff/appellee.
Ronald J. Miciotto, Shreveport, for defendant/appellant.
Before LINDSAY, HIGHTOWER and VICTORY, JJ.
LINDSAY, Judge.
The defendant, Annette Lee Davis, appeals from a trial court judgment which modified a joint custody plan making the plaintiff, Jerry Lee, domiciliary parent of their two minor daughters. For the reasons assigned below, we affirm.

FACTS
The parties were married in 1978. Of this union, two children were born: Holly (DOB 10/27/78) and Michelle (DOB 01/16/85). In February of 1987, the parties physically separated. Initially, the plaintiff, Jerry Lee, retained physical custody of the children. However, approximately six months later, due to a change in his living arrangements, Mr. Lee relinquished physical custody of the children to the defendant.
A judgment of separation was rendered in December, 1987. Joint custody of the children was awarded. At this time, the defendant was designated as the domiciliary parent. In October, 1988, a judgment of divorce was rendered. This judgment ordered that the previous award of joint custody be continued.
Both children continued to reside with their mother until about March, 1989. At that time, Mrs. Davis and Michelle moved to California. Holly, who was then 10 years old, refused to accompany her mother. Instead, she was allowed to remain in Louisiana with her father and his new wife, Joyce, who he had married in February, 1989. Because of these events, the parties consented to a modification of the joint custody plan. Holly was placed with her father, and reasonable visitation rights were awarded to her mother. Michelle remained with her mother in California.
In July, 1989, Michelle returned to Louisiana for summer visitation. In August, 1989, the plaintiff refused to return Michelle to the defendant. Instead, he sought modification of the custody plan, alleging that the defendant was living in open concubinage with her paramour, Ken Davis, and that four-year-old Michelle was sharing a bedroom with the paramour's adult brother. Furthermore, the plaintiff alleged that, since coming to live with him, Holly had informed him of the defendant's use of drugs in the presence of the children. A preliminary injunction was rendered ordering that the children remain in Louisiana.
A hearing on the rule to modify custody was held on January 16 and 17, 1990. During the hearing, testimony was given by both parents and Ken Davis, who the defendant had married in October, 1989. The plaintiff's wife did not testify as she had given birth to twins the day before the hearing began. Expert testimony was given by Don Heacock, a court-appointed psychologist, and Dr. Gerald Baker. Friends and relatives testified on behalf of both parents to refute various allegations of drug use by the parents. Additionally, the court interviewed the children off the record.
Each parent alleged misconduct by the other. The plaintiff claimed that he had seen marijuana and drug paraphernalia at the defendant's apartment in January of 1989, when both of the children were residing with her. The plaintiff denied the defendant's allegations that he had interferred in her efforts to communicate with the children. The defendant, in turn, denied the plaintiff's allegation that when she first moved to California she failed to communicate with him and Holly.
The testimony established that the living circumstances of both families were such that, if the girls were kept together, they would have to share a room for a short period of time. The plaintiff testified that, due to the birth of the twins, he planned to add another bedroom and bathroom to his three-bedroom, two-bathroom house in order for the girls to have separate bedrooms. The defendant's husband asserted that he and his wife were planning to move *1132 out of their two-bedroom apartment and buy a three-bedroom house in California.
Mr. Heacock, a board-certified clinical social worker, testified that the girls should not be separated. Furthermore, he stated that it was not in Holly's best interest to be uprooted and forced to live in California. Although he had only interviewed the defendant and her new husband on one occasion, he testified that his impression of the defendant was that she was somewhat immature for her age. However, he felt the defendant intended to be a good mother. He also testified that he believed the truthfulness of Holly's account of witnessing drug usage by her mother's friends. While both girls appeared to love their mother, Mr. Heacock noted that both seemed to get along well with their step-mother.
Dr. Gerald Baker, who testified on behalf of the plaintiff, had evaluated the girls in the summer of 1989. He felt there was a close bond between them and that they should not be separated. He also noted that the girls got along well with their stepmother and were excited about the birth of the twins.
At the conclusion of the hearing, the court ordered that the joint custody plan remain in effect. However, the court modified the plan to establish the domicile of both children with the plaintiff. The court awarded liberal visitation rights to the defendant and allowed her to take Michelle back to California for an extended period of visitation which was to last until the end of July, 1990.
The defendant appealed. She contends that there was insufficient evidence before the trial court to justify a modification of the joint custody plan to make the plaintiff domiciliary parent of both children.

LAW
Custody of children after divorce is regulated by LSA-C.C. Art. 157 and, by reference, Article 146.[1] The primary consideration is always the child's best interest. See former Article 146(E), now Article 131(E).
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Moore v. Moore, 544 So.2d 479 (La.App. 2d Cir.1989).
Where, however, no evidence has been adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a "considered decree" within the meaning of Bergeron. McGee v. McGee, 552 So.2d 576 (La.App. 2d Cir.1989). Where there has not been a considered decree, the heavy burden of proof of Bergeron is not applicable, but there must be a showing of change of circumstances since the original decree. Meredith v. Meredith, 521 So.2d 793 (La.App. 2d Cir.1988); McGee, supra; Moore, supra; Myers v. Myers, 561 So.2d 875 (La.App. 2d Cir.1990); Tolar v. Tolar, 569 So.2d 267 (La.App. 2d Cir.1990).
The separation of children of a family, though sometimes necessary, is a custodial disposition that courts seek to avoid. Normally, the welfare of these children is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape its orders to maintain family solidarity. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969).
In child custody cases, the decision of the trial court is to be given great weight and will be overturned only where there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988).

*1133 DISCUSSION
The defendant contends that the trial court erred in modifying the joint custody plan to expand the plaintiff's status as domiciliary parent to include Michelle, as well as Holly. She maintains that the evidence before the trial court did not justify such a modification. We disagree.
The jurisprudence requires that before there can be a modification of a consent decree, such as the one in this case, the party seeking modification must prove a change of circumstances since the last decree and that the modification is in the child's best interest. In the instant case, several circumstances have changed since the rendition of the consent decree in March 1989. The defendant has married her paramour. The plaintiff and his present wife have become the parents of twins. Michelle is older, and her needs have changed accordingly. She is now of elementary school age and requires a more structured environment to nurture her educational development. Most importantly, the effectand wisdomof the parents' voluntary separation of these two young sisters may now be assessed.
The evidence amply demonstrates shortcomings on the part of both parents, such as the exposure of the children to their premarital relationships with their present spouses. Further, personal animosity between them has obviously interfered with their ability to cooperate with each other for the sake of their daughters. Each has been guilty of drug abuse in the past, although the evidence established that Mr. Lee has been drug free for several years. However, as to the defendant, there was testimony indicating that she had recently used, or allowed others to use, drugs in close proximity to the girls.
The evidence also shows considerable questionable judgment on the part of the mother. Specifically, we refer to the living arrangements to which Michelle was subjected after the move to California. In early April, the defendant wrote to Holly, telling the girl that her paramour's adult brother was living with her, the paramour, and Michelle. Furthermore, she wrote that "[the brother and] Michelle share this huge bedroom." At trial, the defendant and her present husband testified that the brother only lived with them a few months. They also testified that even though Michelle's bed was in the same bedroom as the brother's waterbed, the brother never slept in the same room as the child. Their testimony demonstrated that this four-year-old girl did not have a bedroom to herself in the two-bedroom apartment shared by her mother and two non-related adult males and that her sleeping arrangements were dictated according to which of the brothers was at home on a particular night. Such circumstances reflect poorly upon the defendant's judgment. Furthermore, these sleeping arrangements existed all or most of the time Michelle lived in California, and they were a major factor in the plaintiff's refusal to return Michelle to the defendant at the end of summer visitation.[2]
The overwhelming consideration in this case is the separation of these young sisters. The defendant seeks to regain custody of Michelle and thus argues that separation of siblings is sometimes appropriate. See Price v. Price, 451 So.2d 1187 (La.App. 1st Cir.1984); Daugherty v. Cromwell, 501 So.2d 955 (La.App. 2d Cir.1987); Meredith v. Meredith, supra. However, as this court noted in the Meredith case, separation of siblings is a hard choice "which we would not frequently approve...." The circumstances of the present case do not justify a separation of Holly and Michelle.
The two experts, Mr. Heacock and Dr. Baker, both testified that the two girls should not be separated. Holly and Michelle are full blood siblings of the same gender with an age difference of about six years. This age gap is not so large as to preclude the girls from sharing some similar interests and from deriving great benefit and comfort from living together as part of a family unit. Otherwise, their sisterly bond will be strainedand perhaps severedby great geographical distance and *1134 lengthy separations during the school year. The plaintiff and his present wife have demonstrated their ability to provide a nurturing home environment through their care of Holly, who is doing well in school. Although the experts testified that the birth of the twins would cause some stress, the evidence demonstrates that this family event was eagerly anticipated by the girls. Furthermore, on those occasions when the girls require feminine guidance and counsel, their stepmother (with whom they have a close relationship) is readily available to them on a daily basis. Also, they may consult the defendant in the course of their regular telephone conversations and holiday visitations.[3]
The ultimate issue in a custody dispute is the best interest of the children. Clearly, it is in the best interest of these children that they remain together. Furthermore, it is equally clear that Holly should not be uprooted from a stable and loving environment in which she has been flourishing. Therefore, the circumstances of this case mandate that Michelle should likewise remain here and receive the full benefits of this same environment and her sister's company.
Based on the foregoing, we find that the trial court did not abuse its great discretion in making the plaintiff domiciliary parent of both Holly and Michelle.

CONCLUSION
The judgment of the trial court is affirmed at the defendant's cost.
AFFIRMED.
NOTES
[1] Effective January 1, 1991, Article 157 was redesignated as Article 134, and Article 146 was redesignated as Article 131.
[2] Mr. Davis testified that his brother moved out in May or June, 1989. The defendant testified that he did not move out until sometime between August and October, 1989.
[3] Although the trial court found that cooperation between the parents was lacking in some respects pertaining to communication, we trust that both parents will heed the trial court's admonitions and fully comply with all court orders on this subject.