ALFORD, Judge.
This is a child custody suit wherein the mother, Rosalyn Rollins, claims the trial court should not have vacated the original joint custody decree and awarded permanent custody of the minor child to the father, Dexter L. Rollins. We reverse and reinstate the original joint custody decree.
FACTS
The parties were married on July 16, 1966. Of this marriage, two children were born, namely David Cordell Rollins, who is now eighteen years of age, and Michael Dexter Rollins, who is now fourteen years of age.
Mr. and Mrs. Rollins physically separated in August 1986, and obtained a judgment of separation on October 31, 1986. In this judgment, the parties were awarded the joint care, custody and control of the minor children with Mrs. Rollins designated as the residential parent.
On April 2, 1987, Mr. Rollins filed a Rule to Change Custody and Use of the Family Home. He also filed a petition for divorce on May 6, 1987, in which he reiterated his claim for custody of Michael, the younger child, as David had reached the age of majority. A judgment of divorce was signed on June 5, 1987.
After a hearing was held on the rule, the trial court rendered judgment in favor of Mr. Rollins vacating the previous custody decree and awarding him custody of Michael and use of the family home. Mrs. Rollins has appealed only the issue of child custody.
LAW
La.C.C. art. 157(A) states: “In all cases of ... change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.” Article 146(C) provides that there shall be a rebut-table presumption that joint custody is in the best interest of a minor child. The presumption may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to the enumerated factors. La.C.C. Art. 146(C)(2).[1]
*649 In the instant case, the trial court found that Mrs. Rollins was engaged in an illicit relationship in the former matrimonial domicile. Mrs. Rollins admitted sleeping with her paramour in her home but stated she did not while the children were in the house. David, the older son, testified that his mother’s paramour began coming over to the house every day and on one occasion, he opened his mother’s closed bedroom door and saw them sleeping in a state of undress together. He also testified that on another occasion he heard them “making love in the bed where my father had slept.” David moved in with his father shortly after these incidents and is now attending college at Duke University.
Michael, however, testified that he wanted to live with his mother, even if she did not live in the family home. He stated he does not mind his mother’s relationship with the other man and that he has never witnessed any impropriety on their part. He also testified that his mother assists him with his studies when he needs it and allows him to visit with his father.
The trial court found that the original custodial arrangement did not really amount to joint custody but was a custodial and visitation arrangement. The boys, however, spent as much time as they wanted with their father so as to assure them of “frequent and continuing contact with both parents.” La.C.C. Art. 146(D). Joint custody contemplates a sharing of physical contact with the children, although an equal sharing of custody is not mandated. Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987). Mr. Rollins, therefore, bore the heavy burden of proving that a modification of the joint custody decree would be in Michael’s best interest.
Although we agree with the trial court that Mrs. Rollins was engaged in an illicit relationship, we can not conclude from the record that this relationship alone has had a detrimental effect on Michael. An award of custody is not a tool to regulate human behavior. Cleeton v. Cleeton, 383 So.2d 1231 (La.1979). Mrs. Rollins had been living separate and apart from her husband for some time before she became involved with another man; Her conduct in this regard was not flagrant and indiscreet and was not shown to have taken place in Michael's presence. See Pauley v. Pauley, 425 So.2d 1313 (La.App. 1st Cir.1983). She seems to have conducted herself with considerable discretion and has never neglected to provide for Michael’s basic needs. Stephenson v. Stephenson, 404 So.2d 963 (La.1981).
The trial court noted that the divorce itself was a very traumatic experience for Michael, as evidenced by his wearing an earring in his ear and having some disciplinary problems in Boy Scouts. There has, however, been no proof that a modification of the joint custody decree would be in Michael’s best interest. We therefore find that Mr. Rollins failed to carry the heavy burden required to modify the joint custody decree.
Mrs. Rollins was granted a devolutive appeal limited to that portion of the judgment vacating the original custody decree and granting custody of Michael to Mr. Rollins. Since she did not appeal that portion of the judgment changing use of the *650 family home, that portion of the judgment shall stand and Mr. Rollins will be allowed to remain in the family home pending a community settlement.
For the above and foregoing reasons, the judgment vacating the original joint custody decree and granting sole custody of the minor child, Michael Dexter Rollins, to Dexter L. Rollins is reversed, and the original joint custody decree is reinstated, with Rosalyn Rollins being the residential parent and with Dexter L. Rollins having reasonable access and visitation. Costs are to be paid by defendant-appellee.
REVERSED AND RENDERED.

. La.C.C. art. 146(C)(2) provides:
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
******
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
*649 (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(/) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.