981 So.2d 1229 (2008)
B.M., the mother, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, et al., Appellees.
No. 4D07-3681.
District Court of Appeal of Florida, Fourth District.
May 14, 2008.
*1230 Roger Ally of the Law Offices of Roger Ally, P.A., Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeffrey P. Bassett, Assistant Attorney General, Fort Lauderdale, for Appellee  Department of Children & Families.
PER CURIAM.
The mother, B.M., appeals a dependency order which terminated protective supervision by the Department of Children and Families (DCF) after placing the minor child, B.B., with the father and restricted the mother's visitation with the child. We affirm the order, except that portion which conditions the mother's visitation with the child upon her providing the court with a negative drug screen.
DCF brought a shelter petition as to the four-year old boy, B.B., on September 18, 2006. B.B.'s father is T.B. and his mother is B.M. The specific ground for removal was, as follows:
The mother & child were residing at Women in Distress because of domestic violence between the parents. On 9/12/06, the mother left the child w/ another resident, indicating she would soon return. The mother did not return until late the next afternoon. She had left no contact information & appeared intoxicated when she appeared on 9/13/06. Because of her failure to comply with program rules WID evicted her as of 9/15/06. When the mother discovered that the PI wanted to speak to her the mother evaded her for several hours. Finally, there is a history of domestic violence & mental health issues, and parents may have restraining orders.
On September 18, 2006, the trial court entered a shelter order. It ordered supervised visitation with the mother twice a week.
On October 16, 2006, DCF filed its verified petition for dependency as to both parents, alleging the same basic grounds against the mother as were alleged in the shelter petition.
On October 12, 2006, a "Report to Update the Court," was filed, apparently by ChildNet, the agency charged with supervision of the mother's visitation with the child. The mother was noted to have missed three scheduled visits. Her explanation for missing the first visit on October 5 was that she overslept. On October 10, she said that she was attending a doctor's appointment, and on October 11, she said that she needed to attend a follow-up doctor's appointment. The agency asked to be excused from its supervisory responsibility and requested the case be referred to Kids In Distress or another structured program.
On December 5, 2006, DCF moved to modify placement, asking that the child be *1231 placed in the temporary custody of the father, T.B. The court granted the motion, and on December 7, 2006, the father was voluntarily dismissed by DCF as a party to the dependency proceeding.
On December 4, 2006, following dependency mediation, the parties agreed that the father would have temporary legal custody under the protective supervision of DCF. The mother was to have supervised visitation with the child. The mother agreed to successfully complete the following tasks: (a) parenting classes, 20 weeks followed by in-home reunification services; (b) substance abuse evaluation and follow all court ordered recommendations; (c) psychological evaluation and follow all court ordered recommendations; (d) individual counseling; (e) sign a consent for a limited release of information relating to her diabetic condition and treatment and her previous Baker Act; (f) domestic violence for victims classes, and (g) maintain stable housing and income.
On March 14, 2007, a magistrate conducted the judicial review/permanency review and made certain recommendations. The report noted that the mother had not complied with her agreement to undergo substance abuse counseling, take parenting classes, and maintain stable housing and employment. By contrast, the father was in compliance with the voluntary services of parenting and domestic violence classes. The report also noted that the mother had not complied with court-ordered visitation. The magistrate recommended the following:
The mother shall have no contact with the child until she presents herself to the court, and provides proof of compliance with substance abuse counseling and at least one recent negative drug screen.
The court ratified the report and recommendations by order dated March 26, 2007.
The mother then moved for supervised visitation. The trial court denied her motion without prejudice. The court ruled that the mother would have to appear before the court and enroll in a substance abuse treatment program and have at least one negative random urine test before her visitation could resume.
On June 13, 2007, DCF moved to terminate protective supervision. However, it then filed an "emergency motion for modification of custody/placement" based on the father being arrested for domestic violence against the child's stepmother. On June 28, 2007, that motion to modify custody was denied and the mother was given supervised visitation with the child.
On July 11, 2007, the trial court entered the following order:
. . . it is hereby ordered and adjudged that the Department's motion for termination of supervision is denied. The mother shall give her current address and phone number to the Department today. Mother shall have a hair follicle test today and shall submit to at least two random urinalysis drug tests within three to four hours of being contacted for randoms. Mother's motion for visitation is denied.
On September 10, 2007, the trial court heard the DCF motion to terminate supervision. Jennifer Puguero, the child advocate for Child Net, was the sole witness. She testified that the child is living with his father and stepmother and doing very well. He is in kindergarten now. The mother has not complied with her case plan by providing proof of completion of the parenting classes and the substance abuse program, stable housing, stable income, participation in individual counseling, domestic violence for victims, *1232 a psychological evaluation, a release of information regarding her diabetic condition or Baker Act or payment of child support. When she had visitation rights she was visiting with the child sporadically. She has tested positive for cocaine on the hair follicle test but negative on the urine tests.
The trial court granted DCF's motion to terminate supervision, adding:
Mother is to have no visitation, until she has a negative hair follicle test. Once she has a negative hair follicle test and provides it to Our House or Kids in Distress she may have structured supervised visitation. DCF to provide the mother with one more set of referrals for all case plan tasks to be good for 1 year (upon request from mom) and to provide non-expiring referral for visitation @ kids/our house.
Apparently, no predisposition study was prepared in this case. The mother complains about this for the first time on appeal. However, since this argument was not raised below it was waived. F.L.M. v. Dep't of Children & Families, State of Fla., 912 So.2d 1264, 1268 (Fla. 4th DCA 2005).
A trial court's decision regarding visitation to a non-custodial parent is judged by an abuse of discretion standard of review. A.B. v. Dep't of Children & Families, 834 So.2d 350, 351 (Fla. 4th DCA 2003). The purpose of a dependency proceeding is "the protection of the child and not the punishment of the person creating the condition of dependency." § 39.501(2), Fla. Stat. (2007). It is the public policy of this state that each minor child has "frequent and continuing contact with both parents." See § 61.13(2)(b)(1), Fla. Stat. (2007).
A parent's illegal drug use, alone, does not establish that the child's safety is threatened. W.N. v. Dep't of Children & Family Servs., 919 So.2d 589, 591 (Fla. 3d DCA 2006). Even where a parent's illegal drug use might pose a safety threat to the child, that threat can usually be ameliorated by requiring that visitation with the child be supervised. See In re Marriage of Oertel, 216 Ill.App.3d 806, 159 Ill.Dec. 766, 576 N.E.2d 435, 443-44 (1991); Cooper v. Cooper, 579 So.2d 1159, 1164 (La.Ct. App.1991).
Although the mother's supervised visitation in this case was sporadic, even sporadic visitation is better for a child than no visitation at all. There is no evidence here that the mother ever appeared for her supervised visitation while under the influence of drugs. There is no evidence that the interest of the child's welfare would be better served by depriving the child of visitation with the mother. Put simply, there is nothing in the record in this case which would justify denying the mother renewed supervised visitation with the child, regardless of her inability to produce a negative hair follicle drug test.[1] We are unable to distinguish this case from A.B., wherein we reversed the no contact order because the record showed that the order "was not entered in the interest of the child's welfare but to sanction the mother for not attending the review hearing or complying with the court's directives." A.B., 834 So.2d at 351. Thus, the order denying supervised visitation *1233 is an abuse of discretion and must be reversed.
Affirmed in part, Reversed in part and Remanded.
WARNER, POLEN and TAYLOR, JJ., concur.
NOTES
[1] We note that a hair follicle drug test will remain positive until approximately ninety days after the individual stops using cocaine. Thus, even if the mother wanted to comply with the order immediately, she might be unable to do so, and both she and the child would be punished unnecessarily by the deprivation of supervised visitation during the ninety-day cleansing period.