DREW, J.
|! Edgar Morales appeals a judgment awarding primary domiciliary custody of his twin daughters to their mother, Rebecca Leeann Ramsey. Having thoroughly reviewed these consolidated records, we find no abuse of discretion below, and we affirm.
BACKGROUND
In 2008, at the age of 18, Leeann Ramsey and her significant other, Kayla Bennett, moved into the home of Edgar and Rebecca Morales. At some point, Edgar and his wife asked Leeann and Kayla if they would have a baby for them.
Edgar, who is 10 years older than Leeann, began a sexual relationship with her that resulted in Leeann becoming pregnant with twins.
*65 In April of 2009, Leeann entered into a written agreement[1] which provided that she was having the baby for the Morales-es, with whom the baby would live, and that the Moraleses would make all decisions about the child, though Leeann could see the baby at any time by giving notice. The twins were born in October of 2009.
On August 18, 2011, when the twins were 22 months old, Leeann filed a petition for custody. Later that month, the Moraleses filed a separate suit, with a rule for custody and a proffered ex parte order for temporary custody. Days later, the trial court issued an instanter order placing custody of the twins with the Department of Family Services (“DFS”), which accounts for the third record.[2]
12As often happens when instanter orders grant custody to DFS, the parties quickly reached agreement as to an interim order designating a one-week rotation of physical custody of the twins. The trial court recalled the instanter order and approved the weekly rotation of physical custody between Leeann and Edgar, pending a decision on custody and visitation.
TRIAL
A hotly contested trial was held on five dates between March and September of 2012. Rebecca Morales was ultimately dismissed as a party.
In a ruling rendered November 2, 2012, the trial court noted that each parent had at times displayed behavior which put his or her own interest ahead of the twins’ best interests. The court also noted that it could not find clear and convincing evidence justifying an award of sole custody. While each party had made accusations against the other, the court found most of the accusations to be inconsequential or moot. The court recognized that the parties were willing to address their problems.
After considering the factors listed in La. C.C. art. 184,[3] the court ^acknowledged that the determination of custody was a close call. The trial court was particularly impressed by the stability and geographical nearness of Leeann’s family, which would afford her a network *66 of assistance with the children. In addition, Leeann’s work hours were more flexible than Edgar’s.
The trial court designated Leeann as the domiciliary parent,[4] which is the sole issue in this appeal.
We annex hereto and adopt in toto the trial court’s ruling relative to its domiciliary assignment.[5] The document is thorough, well-organized, and an incisive model of clarity. This court expresses its appreciation for a job well done.
EDGAR’S ARGUMENT ON APPEAL
Edgar argues that the trial court was manifestly erroneous by not fully considering the evidence or properly applying it to certain factors (1, 4, 12) under Art. 134.

Factor 1: Love, affection, and other emotional ties between the parties and the children

The trial court found that both parents loved the twins and were involved in their upbringing.
Edgar argues that the evidence shows:
|4« a strong emotional tie between Edgar and his children and a lack of emotional connection between Leeann and the twins;
• Leeann contracted away her parental rights while the twins were still in her womb, and she held herself out as their aunt and not their mother;
• Leeann saw the twins only once a month after they were born and even those visits were not maternal visits;
• he cared for the twins from the time they were born until the issuance of the instanter order in August of 2011; and
• the twins were not meaningfully in Leeann’s care until October of 2011.
Leeann responds that Jessica Byrd, a social worker assigned to the twins, testified that the twins had a hard time separating from both Edgar and Leeann. Carol Jung, a friend of both parents, testified that the twins love both parents.

Factor 4: Length of time in a stable, adequate environment, and the desirability of maintaining continuity of same

The trial court concluded that the existing temporary custody arrangement had not been damaging to the twins and had worked well.
Edgar argues that:
• the continuity to be considered should not be limited to the start of litigation but should go back to the birth of the children;
• he cared for the twins from birth until the issuance of the instanter order; and
• the court did not find that he had provided an inadequate or unstable environment for the twins.
Leeann responds that:
• it is insignificant that the twins lived with Edgar for their first two years because she was also living there;
• Edgar has not provided the twins with a stable environment, in that he | ¡¡moved from Monroe to Calhoun to Columbia and then to Grayson during the first two years of the lives of the twins;
*67 • he now lives in a small mobile home in Columbia within 2.5 miles of 17 registered sex offenders;
• Rebecca has an arrest record relating to traffic matters and bad checks; and
• Edgar is an illegal alien.

Factor 12: Care for and rearing of the children previously exercised by each party

Social worker Byrd testified that Edgar told her that Leeann helped care for the twins. The record also preponderates that Leeann may have been afraid to take the twins with her when she returned to her parents in 2011 because of the bogus written agreement and because of threats from Rebecca Morales. She sued to obtain custody within a few days of returning to be with her parents.

The Other Nine Factors

The remaining factors of Art. 134 either favor Leeann or are inconclusive. These appear to have played no part in the trial court’s decision.
OUR ANALYSIS
These parents are flawed, as are we all. Doubtless each litigant regrets certain actions taken in the past.
Our duty in this appeal is to decide whether it was manifestly erroneous or clearly wrong to designate Leeann as the domiciliary parent. We cannot make that finding on these consolidated records.
The trial court found this case to be close. We agree, and it is 1 fiprobable that had the trial court ruled the other way, we would be constrained to affirm that judgment. As it is, we affirm the judgment below.
DECREE
At the cost of Edgar Morales, the judgment is AFFIRMED.
APPENDIX
REBECCA LEEANN RAMSEY
VERSUS NO. C.D. 44,649 consolidated with C.D. 44,656 & JD 7168
EDGAR MORALES
THIRD JUDICIAL DISTRICT COURT
STATE OF LOUISIANA
PARISH OF UNION
Filed November 2, 2012 [illegible signature] Clerk
|,RULING
A. REBECCA LEEANN RAMSEY (hereinafter referred to as “Miss Ramsey”, filed a Petition for Custody on August 18, 2011.
B. EDGAR MORALES and REBECCA MORALES (hereinafter referred to as “Mr. Morales and/or Mrs. Morales” as appropriate) filed a Rule for Custody and Ex parte Order for Temporary Custody on August 23, 2011.
C. By Order of this Court of August 24, 2011, C.D. # 44,656 was re-assigned to Division C, as C.D. # 44,-649 had been previously and the cases consolidated for trial.
D. The Trial of this matter was initially begun on the 5th day of March, 2012. For reasons pertaining to scheduling, as reflected in the transcripts, the matter was recessed and concluded on multiple dates as follows, to-wit:

March 5, 2012

April 30, 2012

*68
July 2, 2012

August 27, 2012

September 7, 2012

E. Oral arguments were had, before the Court, on the 4th day of October, 2012. After hearing the arguments the Court took the matter under advisement so as to issue a written ruling which the Court now delivers.
F. Mrs. Morales, by stipulation of the parties immediately prior to closing arguments, was dismissed as a party to this litigation.
I ¡¿aw
The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Hoskins v. Hoskins, 36,031 (La.App.2d Cir.4/5/02), 814 So.2d 773; Masters v. Masters, 33,438 (La.App.2d Cir.4/5/00), 756 So.2d 1196, writ denied, 01-3096 (La.12/7/01), 803 So.2d 975. La. C.C. art. 134 provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interest of the child. La. C.C. art. 131, provides, “The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
I. The love, affection and other emotional ties between each party and the child.
II. The capacity and disposition of each party to give the child love, affection and spiritual guidance and to continue the education and rearing of the child, clothing, medical care, and other material needs.
III. The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
IV. The permanence, as a family unit, of the existing or proposed custodial home or homes.
V. The moral fitness of each party, insofar as it affects the welfare of the child.
VI. The mental and physical health of each party.
VII. The home, school, and community history of the child.
VIII. The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
IX. The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
X. The distance between the respective residences of the parries.
XI. The responsibility for the care and rearing of the child previously exercised by each party.”
The consideration of all relevant factors under Article 131 should be followed in actions to change custody, as well as in those to fix custody initially. The court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 131, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another; and, when determining the best interest of the child, the factors must be weighted and balanced in view of the evidence presented. Hos-kins, supra. Moreover, the factors are not exclusive, but are provided as a guide to *69 the court, and the relative weight given to each factor is left to the discretion of the trial court. Id.
This Court has evaluated the current situation in light of a number of cases including, but not limited to those cited by respective counsel.
| .¡According to an examination of the relevant case law, this Court is compelled to believe that focusing on just one element, under La. C.C. art. 131 to the exclusion of others is frowned upon by our appellate Courts, regardless of what a Court’s personal preferences may be.
Each parent has exhibited behavior which periodically puts their respective self-interests above that of their children.
This Court cannot find under La.CC. art. 132 and 13k, “that custody in one parent is shown by clear and convincing evidence to serve the best interest of the child,” necessary for a sole custody award. Each' parent is burdened by limitations and neither has been totally beyond reproach in his or her conduct as concerns the issues at bar.
The allegations made by each side, toward the other, have been extraordinarily salacious and detailed. However, as acknowledged in closing arguments by both counsel, most, if not all of the purported sexual and other related ‘moral fitness’ issues took place prior to the birth of the children.
Therefore, as concerns La.C.C. Art. 134(6), this Court bears in mind the admonitions of our higher courts and their instructions relative thereto, which this Court is obligated to follow, to-wit:
“Factor (6) of this Article has been amended in order to state what is believed to be the the better rule on the much-litigated issue addressed by it. Its predecessor, factor (f) of Civil Code Article 131(C)(2) (1992), read simply “(t)he moral fitness of the parties involved.” The language added here brings the statutory provision into line with the fundamental principle that the purpose of every custody award is to secure the best interest of the child, not to regulate the behavior of his parents. Stephenson v. Stephenson, 404 So.2d 963 (La.1981) (upholding award of custody to wife whose past adulterous behavior was not shown to have had any detrimental effect on the children); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980) (same). See also Monsour v. Monsour, 347 So.2d 203 (La.1977) (same: primary consideration was welfare of child, not past misconduct of custodian.) But see Bagents v. Bagents, 419 So.2d 460 (La.1982) (upholding change of custody from mother who had lived in open concubinage in the custodial home). The rule embodied in this Article should apply not only to past misconduct, as in the cases just cited, but also to continuing immorality that does not harm the child. See Rollins v. Rollins, 521 So.2d 647 (La.App. 1st Cir.1988), writ denied, 522 So.2d 573 (La.1988) (joint custody not modified where there was no showing that mother’s discrete illicit relationship had detrimental effect on child); Montgomery v. Marcantel, 592 [591] So.2d 1272 (La.App. 3d Cir.1991) (change of custody to sole custody in wife due to father’s living in concubinage reversed in absence of evidence of detrimental effect on child); Peters v. Peters, 449 So.2d 1272 [1372] (La.App. 2d Cir.1984) (upholding judgment refusing to take child from custody of mother who was living in concubinage with man she planned to marry); Peyton v. Peyton, 457 So.2d 321 (La.App. 2d Cir.1984) (upholding equal joint custody award where both parents were engaged in discrete sexual relationships that had *70 no adverse effect upon the child.)” comments to La.C.C.Art. 134.(6).
As stated hereinabove, the paramount consideration in any determination of custody is the best interest of the child. La. CC art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. La. CC Art. 134 sets forth the factors that shall be considered in determining the best interest of a child for custody issues.
FACTS AND REASONING
The Court has reviewed all exhibits introduced, the suit record and listened to all testimony offered. The Court also was able to observe the demeanor of the witnesses. Pursuant thereto, the Court makes the following findings of fact.
The evidence and arguments presented to this Court sought to address a majority of the factors set forth in La. C.C. art. 134. Miss Ramsey and Mr. Morales both indicate their love for the children and there was no evidence that either is better suited to give the child love affection, spiritual guidance, or to continue with the rearing and education of the minor children. Both parties have the capacity to provide the minor child with food, clothing, medical care and other material needs.
There was no evidence presented to indicate that either party was morally unfit, insofar as the welfare of the minor children are affected and in light of the aforementioned comments to La.C.CArt. 134(6).
There was no testimony that either party is currently unwilling to facilitate or encourage a close and continuing relationship between the minor children and the other party, nor was there any testimony as to any preference of the minor children.
The testimony that was presented as to the remaining factors to be considered by the Court include the following, to-wit:
The existing temporary custody arraignment has not been toxic and the evidence reflects it has worked rather well.
It is generally agreed that each party loves the children and is currently involved in the upbringing.
As is often the case, each party offered a list of accusations against the other, but, unless otherwise noted, this Court believes them to be mainly inconsequential or moot.
Mr. Morales has no close family that permanently reside in this area. According to counsel for Miss Ramsey, it may very well be that he may relocate again as he has previously or leave this country altogether. However, that is not where the burden lies. The Court is not allowed to speculate on such.
Gray v. Gray, 65 So.3d 1247 (La.7/1/11) was particularly instructive to this Court, even if not dispositive of the specific contested matters at bar. The Louisiana Supreme court, in the body of its ruling and in footnotes, reminds us, that our purposes here are neither to punish nor reward parents, but rather to seek the children’s best interest Relative inconvenience, however transient, cannot overcome our obligation to the children, law and evidence.
1. Miss Ramsey and Mr. Morales are not and were never married.
2. Mr. Morales and Mrs. Morales are married and were so at all time pertinent to this litigation.
3. Miss Ramsey and Mr. Morales entered into an extra-marital relationship resulting in Miss Ramsey becoming pregnant.
4. Subsequently, two children, twins were born, namely: [redacted], date of birth: October 21, 2009 and, [re *71 dacted], date of birth: October 21, 2009.
5. Mr. Morales is employed full time in a ‘tree service’ which is owned by his spouse. Mrs. Morales also works as manager of this tree service which she owns.
6. Mr. Morales came to this country illegally. His exact current immigration status seems to be of some dispute, but the Court finds that the evidence preponderates that he is still here illegally. The evidence did certainly preponderate that he has yet to obtain full legal status in the United States of America.
7. Miss Ramsey was born and raised in northern Union Parish, Louisiana and although she has temporarily resided elsewhere, she is now living with her parents in the Laran community of northern Union Parish, Louisiana. Her family’s ties to Union Parish are lengthy and strong.
8. Miss Ramsey became pregnant while she, Mr. and Mrs. Morales and others were essentially residing under the same roof.
9. The children are generally healthy and being treated by competent physicians for the health problems which they do have.
10. Mr. and Mrs. Morales now live in Caldwell Parish, Louisiana.
| (¡11. There is much that is disputed as concerns the various salacious allegations being tossed about by the parties against one another. What the parties seem to agree on is that most, if not all of these allegations occurred prior to the birth of the children.
12. Miss. Ramsey, while younger, was in an adulterous relationship with Mr. Morales.
18. The evidence represents that Miss Ramsey was at least transiently in a lesbian relationship with another young woman.
14. Miss Ramsey testified and the other testimony supports her contention that she is no longer in a lesbian relationship and no longer desires one.
15. According to the version of events accepted as true, Mrs. Morales at least tacitly condoned the relationship of her husband and Miss Ramsey, if she did not outright encourage it.
Considering the totality of the evidence and the law, the Court awards joint custody of the minor children to the parties and designates Miss Ramsey as the primary custodial or domiciliary parent. This is a close call, but the stability of the maternal family tips the scales in her favor. Miss Ramsey is to have custody for approximately 55% of the time. Each appears to be willing to address their problems as noted herein. Additionally, Miss Ramsey has more flexible job hours and a stable supportive family who have participated in helping her with the children. When the Court considers the factors in Civil Code Article 134, this is the more appropriate custody determination.
The Court also orders the parties to adopt a joint custody plan implementing the above and with standard provisions incorporating inter alia, the following:
1. No overnight guests of opposite sex to whom the parties are not related.
2. No consuming illicit drugs or excess alcohol when having the children.
8. Provide for regular telephone and email communication time with whomever is the non-custodial parent at that time.
*72 4. A plan for how to share information when the other party has.the child.
5. Regular counseling for all parties to address communication and other issues for at least one year from the date of this judgment.
|76. Attending Children in the Middle within 90 days of this judgment.
At all times during this trial, Miss Ramsey had the assistance of an interpreter who was accepted by the Court as expert in interpreting the language in which she was tendered. The interpreter has provided a copy, received post-trial of a statement for her services. This has been provided to all counsel.
Normal procedure to tax an expert or attorney fee as costs would be to prove up the matter during the trial or in a separate post-trial hearing for that specific purpose.
In this case, the interpreter has asked for little, if any remuneration for time spent outside of the actual trial in the courtroom. This has been subject to the scrutiny and observation of the Court.
Therefore, for the purposes of equity and economy, the Court feels that it would present an unjust burden on all parties to have to appear at an additional hearing solely for the purpose of establishing the fee for the interpreter. Such a hearing would necessitate an additional appearance of the interpreter and thus further increase the costs.
The Court hereby taxes as cost hereof the interpreter’s fee as submitted, to be apportioned as are the other costs as provided elsewhere herein.
For purposes of this ruling, all eviden-tiary objections are to be considered disposed of in a manner so as to have allowed the evidence for the review of the Court.
Counsel for Mrs. Ramsey will prepare a judgment in accord herewith.
This matter is refixed on the docket for presentation of judgment and post-ruling conference at 9:00 a.m. December 3, 2012. Costs of Court are cast equally between the parries.
The Clerk of Court shall notify and provide a copy hereof to both attorneys of record.
/s/ Jay B. McCallum JAY B. McCALLUM JUDGE, THIRD JUDICIAL DISTRICT COURT

. The agreement was clearly not drafted by an attorney and lacks any apparent legal efficacy.

. In all, three separate suits were initiated in August of 2011.

. Art. 134. Factors in determining child's best interest.
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. The joint custody agreement prepared by the court affords Edgar approximately 45% of the time with the children.

. We have made a change on page 5 of the 7-page document, by blacking out the names of the children involved in this litigation.